# CHARLESTON.

### STATE *v.* JOE THOMAS VEST

### (No. 4972.)

## Submitted January 27, 1925. Decided February 3, 1925.

1. CRIMINAL LAW—*Instruction Singling Out Testimony of Accused, Telling Jury to Consider His Interest in Result of Case as Creating Bias or Prejudice, is Not Proper.*

   An instruction is disapproved which singles out the testimony of the accused in a trial for a criminal offense and tells the jury that they should take into consideration his interest in the result of the case and how far it might bias or prejudice his testimony, in determining the weight and credibility to be given to his evidence.   (p. 140).

   (Criminal Law, 16 C. J. § 2479.)

2. HOMICIDE—*Instruction to Find Accused Guilty if He Was Not in Imminent Danger of Death or Serious Bodily Harm at Time of Alleged Malicious Wounding Held Error.*

   In the trial of an indictment for malicious wounding in which the prisoner relies upon self-defense, substantiated by his evidence, it is error to give a binding instruction to find the prisoner guilty as charged if the jury believes that defendant was, in fact, not in imminent danger of death or serious bodily harm at the hands of his assailant at the time the alleged offense was committed.   (p. 142).

   (Homicide, 30 C. J. § 624.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

HATCHER, JUDGE, absent.

Error to Circuit Court, Raleigh County.

Joe Thomas Vest was convicted of unlawful assault, and he brings error.

*Verdict set aside, judgment reversed, and new trial awarded.*
*T. J. McGinnis* and *C. M. Ward,* for plaintiff in error.

*E. T. England,* Attorney General, *R. A. Blessing,* Assistant Attorney General.

LIVELY, PRESIDENT:

Defendant, Joe Thomas Vest, was convicted of an unlawful assault upon John Vest, in the criminal court of Raleigh County on an indictment charging him with malicious assault upon John Vest with intent to maim, disfigure, disable and kill. He was sentenced to confinement in the penitentiary for one year. He prosecutes this writ of error, the circuit court having refused to disturb the verdict and sentence.

The assault for which defendant was indicted appears to have occurred in a field owned by him and a short distance from his house, the only persons present being defendant, John Vest, the assaulted person, and defendant's wife. John was on his way home from Blue Jay, a lumber operation, and detoured from the road in order, as he says, to cross the creek which was flooded, and came by defendant's house. Defendant was shoeing a horse in the yard in front of his house, and after a friendly conversation, the parties being near relatives, defendant took his horse out the gate and toward the barn in the field, accompanied by John. According to John's version of the fight, after the horse had been unbridled and defendant had the bridle folded in his hand, he asked defendant where the latter's son Kessler was, and was informed that the son, who had been working at Blue Jay, was following him. He then asked what he was being followed for, whereupon defendant begun to abuse the witness and struck him on the head with the bridle probably twice and inflicted cuts with the bit of the bridle; and as he retreated and attempted to get over the fence, defendant picked up a club or stick

lying near and struck him on the side of the head knocking him over the fence rendering him unconscious, and that an hour or so afterwards he recovered his senses, and found himself lying on the defendant's bed in the house and defendant was asking him how he felt. On the other hand, defendant and his wife testify that the prosecuting witness, after going out the gate, began to curse and abuse defendant and drew a knife on him threatening to use that weapon and actually made an assault upon the defendant with the knife when he, defendant, took the bridle off the horse and struck the prosecuting witness in self-defense; and immediately thereafter picked up a chunk or piece of wood and struck him on the shoulder knocking him against the fence, which was partially down (a small tree having fallen across it), and he fell over the fence dropping his knife at that place. Defendant and wife both say that the prosecuting witness was under the influence of intoxicants. They then took him to the house where they administered to his wounds. Massey, a brother-in-law of John, who having heard of the fight came to take John home, said that John's knife was found beyond the fence but it was unopened and that he put it in his pocket and said nothing about it until after defendant had detailed how the fight occurred. He and possibly another witness or so, contradicted the statement made by defendant on the trial in that he had told it somewhat differently when they were at his house on that occasion.

Much evidence was introduced to establish the fact that John, the prosecuting witness, had a bad reputation as a fighter and for turbulence when he was drinking; also evidence to the effect that the reputation of defendant for truth and veracity among his neighbors was bad; and also from other witnesses that his reputation for truth was good. Enough of the evidence has been detailed in order to ascertain if the instructions.given by the court were proper; for the main ground of error relied upon is in the giving of instructions.

State's instruction No. 3 is: ''The Court instructs the jury that although the defendant has the right to testify in his own behalf, yet the jury has the right to take into consideration his interest in the case, and how far, if at all, his

interest might bias or prejudice testimony and give to the
evidence of each and every witness testifying in the case just
such weight and credit as you may believe it is entitled to,
under all the circumstances in the case.'' This instruction in
terms selected the testimony of defendant and directed the
jury to consider his evidence and his interest in the case
and to be cautious how they weighed it. The degree of credit
and weight to be given to the testimony of a witness is always
for the jury, and it is proper for the court to so instruct them,
but an instruction must not invade the province of the jury
in this respect by any intimation of the degree of credit or
weight to be given the testimony of the witness. It is not
proper to single out the evidence of any witness and caution
the jury as to whether or not his evidence should be more
closely scanned than that of any other witness. The instruc-
tions come from the court, and such an instruction might im-
press the jury that the court itself regarded the evidence of
that particular witness with suspicion. An instruction which
did not single out the testimony of any witness by name was
condemned in *State* v. *Ringer*, 84 W. Va. 546, because, ''It
was plainly intended to apply alone to the evidence of the
prisoner'' (page 551 of that opinion). A trial court should
be careful in giving instructions or in any other way indicat-
ing to the jury its view of the weight of the evidence. It has
been held that it is erroneous to charge the jury that the
testimony of a witness interested or prejudiced should be
scanned with care or be received with great caution or dis-
trust; or that a disinterested witness is entitled to more credit
than an interested witness. 16 C. J., page 956, Section 2340;
and in Section 2343 of the same authority, it is said: ''The
credibility of accused, like that of every other witness, is for
the jury to determine; and if they believe his testimony to be
true, they should act upon it, or if they disbelieve it, they
should disregard it; and, as a general rule, it is improper for
the court, in its instructions, to invade the province of the jury
in this regard. The court should not, where the statute makes
accused competent, give instructions discrediting his testimony
or assuming that discrediting facts have been proved.'' Sec-
tion 19 of Chapter 152, Code, makes the accused competent to

testify in his behalf. The instruction by singling out the testimony of defendant cautions them as to his credibility and tended to impress them with the idea that, because of the accused's interest in the result of the trial, the court doubted his credibility. See 2 Michie on Homicide, Section 283 (3d), page 1404.

State's instruction No. 4 reads: "The Court instructs the jury that if you believe from the evidence in this case that the accused Joe Thomas Vest maliciously assaulted and wounded John Vest with a pair of bridle bits and the club testified to in this case, and that at the time the said Joe Thomas Vest made said assault, that he, the said Joe Thomas Vest, was not then in imminent danger of death or serious bodily harm at the hands of John Vest, the jury should find the defendant guilty of malicious wounding as charged in the indictment in this case." This is a binding instruction, telling the jury that if defendant "maliciously" made the assault and was not then in imminent danger of death or bodily harm at the hands of John Vest, he should be found guilty as charged. Defendant relied on self-defense, which, if successfully shown, would be a justification and excuse him from any punishment. The law applicable to self-defense is erroneously stated in the instruction. It is not for the jury to determine that defendant was not in imminent danger of death or serious bodily harm, for it may appear that the appearances of danger were false and that there was, in fact, no design to do him personal injury or danger that it would be done. The jury must put themselves as far as they can in the shoes of the prisoner at the time of the affray and determine from all the circumstances whether he had reasonable grounds for apprehending danger of his life or great bodily harm and that he did believe the danger imminent and that such design would be accomplished, and that he believed it necessary in order to protect himself to use the deadly weapon in his defense. This element of the law governing self-defense is entirely absent from the instruction. *State* v. *Cain,* 20 W. Va. 679; *State* v. *Davis,* 58 W. Va. 94; *State* v. *Beckner,* 3 L. R. A. (N. S.) 535, 91 S. W. 892. The principle under discussion is well stated in *Williford* v. *State,* 38 Tex. Crim. Rep. 393, to the effect that

to warrant action in self-defense it is not necessary that there should have been actual danger, provided the accused acted upon an honest apprehension of the danger as it appeared to him from all the circumstances at the time. A prisoner is justified because he acted upon an honest belief of the existence of danger, and because it reasonably appeared to him from his standpoint under the circumstances that the danger existed and he believed it necessary from the imminency of the danger to repel the attack and save his own life, even to the extent of killing his adversary. If the defendant in this case acted under these well-established principles of self-defense he would be justified and could not have been found guilty of any offense. The jury should have been so instructed; and this instruction so propounded is clearly erroneous.

The verdict and judgment will be set aside and the case remanded for a new trial.

*Verdict set aside; judgment reversed; new trial awarded.*