# CHARLESTON.

## STATE v. HOMER MALE

### (No. 5775)

Submitted March 8, 1927.    Decided March 15, 1927.

1. CRIMINAL LAW—*Errors in Rulings on Evidence, Made Ground of Motion to Set Aside Verdict, or Incorporated in Special Bill or Bills of Exceptions Showing Evidence and Court's Ruling, Are Waived.*

   (Criminal Law, 17 C. J. §§ 3350, 3421, 3422, 3423.)

2. SAME—*Instruction to Consider Credibility of Witnesses as Disclosed by Evidence, Manner of testifying, and Apparent Interest, if Any, Held Not Erroneous, as Applying Alone to Evidence of Defendant.*

   An instruction telling the jury in effect that they are the sole judges of the weight of the testimony of the witnesses, and may take into consideration the credibility of such witnesses as disclosed by their evidence, their manner of testifying and their apparent interest, if any, in the results of the case, is not open to the objection that it is plainly intended to apply alone to the evidence of the prisoner, and for that reason erroneous.    (p. 357).

   (Criminal Law, 16 C. J. § 2480.)

3. SAME—*Instruction on Reasonable Doubt, Though Not Approved, Held Not Error, in View of Another Instruction.*

   As a rule the giving of instructions defining reasonable doubt is discouraged. · (p. 358).

   ( Criminal Law, 16 C. J. § 2396.)

4. ASSAULT AND BATTERY—CRIMINAL LAW—*New Trial Not be Granted, if Sufficient Conflicting Testimony Fairly Submitted Sustains Conviction, Evidence Held to Sustain Conviction for Malicious Wounding.*

   Where testimony in a criminal case is conflicting, and is

fairly submitted to the jury, a new trial will not be granted, if there is testimony sufficient to sustain the verdict. (p. 359).

(Assault and Battery, 5 C. J. § 331; Criminal Law, 16 C. J. § 2707.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Barbour County.

Homer Male was convicted of feloniously wounding, and he brings error.

*Affirmed.*

*William T. George, J. Blackburn Ware, Paul B. Ware,* for plaintiff in error.

*Howard B. Lee,* Attorney General, *J. Luther Wolfe,* Assistant Attorney General, and *W. Bruce Talbott,* for the State.

WOODS, JUDGE:

The defendant, Homer Male, was tried in the circuit court of Barbour county on an indictment charging that he "unlawfully, feloniously and maliciously, did shoot, stab and wound with intent, him, the said Melker Male, then and there to maim, disfigure, disable and kill", etc. He comes here on writ of error, complaining of a judgment of said circuit court, rendered on a verdict of the jury finding him guilty as charged.

The record is a long one, but the pertinent facts may be briefly stated. On the 8th day of November, 1925, the union miners in Barbour county, a strike then existing, held an open mass meeting in the school house on Chestnut Ridge, Barbour county, a few hundred yards from the store of Jess Male. Melker Male, the man who was shot three times, and the party named in this indictment as the person upon whom the felonious assault was made by the defendant, lived on Chestnut Ridge, near the store of Jess Male, but on the side away from the school house. John T. Male and his son, Harold, lived at Morgantown, and had come to the home of the said Melker Male, on Saturday, the day before, on a visit. Harold Male attended the Sunday meeting. Melker Male and John T. Male did not. While at Melker Male's home,

word came to Melker Male and John T. Male that Harold Male was having some trouble out at the school house at the meeting, and the father and grandfather of Harold started out the road to see about the boy and to ascertain the nature of the trouble. When within one hundred and fifty yards of the school house, they met the boy, Harold, coming in the direction of the Melker Male home, and a great crowd following along a short distance behind him, many of whom were cursing and swearing at Harold, whereupon the grandfather, according to a number of witnesses, said to his grandson: "Get out on the road and go home. You can't fight a whole regiment." Jess Male, thereupon called Melker Male a vile name and threw a stone at him, but missed him. Thereupon, defendant, according to seven witnesses, drew a revolver and shot three times at Melker Male, two shots taking effect in his body, thereby wounding him. The trouble grew out of a fight between Harold Male and another boy on the outside of the school house about the time of the close of the meeting. The cause of the altercation does not clearly appear from the record. James Croston says he was in a position to see if Homer Male had a gun, but did not see any; Nason Male says that defendant did no shooting; Ula Male says he had no revolver, and Elmer Croston testifies to like effect; Bill Norris did not see defendant have a pistol; and five others testify that defendant did no shooting. These witnesses testified that John T. Male, the son of the prosecuting witness, did have a gun—some say he had two guns in his hand—and was shooting into the crowd in the direction of Homer Male; that he shot many times and that his father was the victim of his son's shooting. John T. Male admits that he had a pistol, but that what shooting he did was in defense of his father and son. Homer Male, the defendant, claims he did not have a revolver on that day; that he shot no revolver; that some one shot him in the forehead, and that he was knocked down from the effect of this shot. Thus is seen a great conflict in the evidence.

The errors complained of in this case, as enumerated in the comprehensive brief of able counsel, are confined to the ad-

mission and rejection of certain testimony; the instructions to the jury; and that the verdict was not warranted by the evidence.

As to the first error, the admission and rejection of evidence is waived because the same has not been made a special ground for setting aside the verdict, or incorporated in special bills of exceptions showing the evidence and the rulings of the court thereon. A general reference to errors in the introduction of evidence as a ground for setting aside the verdict will not suffice. The court's attention must be specifically called to the errors on such motion, or they must be carried into the record by proper bills of exception. *Roberts* v. *Lykins,* 102 W. Va. 409; *Dransfield* v. *Motor Co.,* 102 W. Va. 370; *Treadway* v. *Coal Co.,* 102 W. Va. 135; *Proudfoot* v. *Transportation Co.,* 100 W. Va. 733; *Trippett* v. *Public Service Co.,* 100 W. Va. 319; *Guyandotte Coal Co.* v. *Elec. & Mach. Works,* 94 W. Va. 300; *Moorefield* v. *Lewis,* 96 W. Va. 112; *State* v. *Jones,* 77 W. Va. 636. To the same effect, *State* v. *Henderson,* 103 W. Va. 361 (decided contemporaneously herewith).

The next point of error relates to the instructions. The defendant requested seventeen instructions clearly presenting his theory of the case, all of which the court gave to the jury. His first complaint stressed as to the instructions given at the instance of the State goes to the one relating to the jury as being the sole judges of the weight of the testimony of the witnesses, and their right to take into consideration the credibility of such witnesses as disclosed by their evidence, their manner of testifying and their apparent interest, if any, in the result of the case. It is strongly criticized as singling out the defendant. The case of *State* v. *Vest,* 98 W. Va. 138, is cited by counsel for defendant to sustain their contention. The instruction under review here is general in its nature and the reference to the prisoner is incident to a general statement of the court as to the weight of evidence, and, as we view it, is not open to the criticism of the instruction in the *Vest* Case, which singled out the prisoner's testimony. There the jury were told that they should take into consideration the defendant's interest in the result of the case and how

far it might bias or prejudice his testimony, in determining the weight and credibility to be given to his evidence. As we said there, it was plainly intended to apply alone to the evidence of the prisoner. The instruction here only refers to the defendant in common with all other witnesses. But, if prejudicial at all, the damage to the defendant's cause by its giving is overborne and removed by an instruction given at his instance to the jury to the effect that as a matter of law, they had no right to disregard the testimony of the defendant, on the ground alone that he was the accused and stood charged with the commission of the crime; but that the law allowed him to testify in his own behalf and it was the duty of the jury to fairly and impartially consider his testimony. Such a curative instruction was not given in the *Vest Case*. As we have shown, the instruction here does not contain the vice of the instruction there given for which that case was reversed.

The other instruction, urged as a cause for reversal, is one wherein the court attempted to define reasonable doubt. It told the jury, in effect that, while they must be satisfied from the evidence of the guilt of the accused beyond all reasonable doubt before they could convict him, yet a reasonable doubt was exactly what that term implied, and did not mean that the jury should be satisfied from the evidence of the guilt of the accused beyond all possible or imaginary doubt, but that they should be satisfied of the guilt of the defendant to a reasonable certainty, and that such reasonable doubt was not a vague or uncertain doubt but such a doubt as reasonable men, remembering their oaths, would entertain with respect to the serious affairs of life. It is assailed as being vulnerable in this, that it uses the terms "serious affairs of life" instead of the phrase "graver affairs of life", and that the jury should be satisfied to "a reasonable certainty", instead of "a moral certainty" of defendant's guilt. There is force in this contention. It has been given in this jurisdiction in the latter terms. Instructions attempting to define a reasonable doubt are generally condemned by text writers on evidence. 4 Wigmore on Ev., Sec. 2497; 2 Chamberlayne on Modern Ev., Secs. 996b and 1016; and 2 Thompson on Trials (2nd Ed.), Secs. 2 and 463. The same attitude has been

taken generally by this Court. *State* v. *Worley,* 82 W. Va.
356; *State* v. *Snider,* 81 W. Va. 522; *State* v. *Alderson,* 74
W. Va. 732; *State* v. *Taylor,* 57 W. Va. 228. The *Worley
Case* says that it is doubtful if the meaning of the words
"reasonable doubt" can be made any clearer or plainer to
intelligent men by any definition thereof that can be given.
The S*nider Case* held that any attempted definition of the
term is more apt to confuse rather than enlighten a jury. Our
views are in accord with these expressions. Taking all of the
instructions together and applying them to the facts in the
case, we do not think it reversible error for the State to pro-
cure its instruction on reasonable doubt, nor have we ever re-
versed a case for that reason alone. We content ourselves
with a reiteration of our disapproval of the practice of at-
tempting to define the phrase, and of the definition here given,
in particular.

The conclusion of the instruction, last discussed, in which
the jury were told that, if they were satisfied from the evi-
dence of the guilt of the accused beyond all reasonable doubt.
as therein defined, they should find him guilty as charged in
the indictment, is charged to be error. It is urged that this
necessarily bound the jury to find the prisoner guilty of the
highest offense. Under the indictment here the prisoner might
be found guilty (1) as charged in the indictment, (2) guilty
of unlawfully but not maliciously committing the offense
(both of which are felonies); (3) guilty of assault and bat-
tery (a misdemeanor); and (4) not guilty. The jury were
instructed to this effect in instruction number eight given for
the State. So, we cannot accept the construction placed upon
the instruction by counsel for defendant.

We last consider whether the evidence warrants the verdict.
The evidence, as we have shown, is very conflicting. The
testimony of the State, if true, amply sustains the verdict of
guilty. The jury has found it to be true. The claims of the
state and defendant were presented to them with force and
ability. Evidently they considered the case with due care.
Better than a court which reviews but the printed record are

they fitted to pass upon the guilt or innocence of the accused. The responsibility for the result rests with them. The learned trial judge gave the verdict his approval by entering judgment thereon. Regardless of the testimony adduced by the defense, we are constrained under our decisions to uphold this judgment. *State* v. *Winans*, 100 W. Va. 418; *State* v. *Porter*, 98 W. Va. 390; *State* v. *Hunter*, 37 W. Va. 744; *State* v. *Baker*, 33 W. Va. 375; *State* v. *Betsall*, 11 W. Va. 743.

The judgment complained of, for the foregoing reasons, must be affirmed.

*Affirmed.*