# Richmond

## ALVIN HARRIS V. COMMONWEALTH.

January 8, 1940.

Record No. 2194.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and
Spratley, JJ.

*R. I. Overbey,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *G. Stanley Clarke, Assistant Attorney-General,* for the Common-wealth.

HUDGINS, J., delivered the opinion of the court.

Alvin Harris was tried and convicted of an illegal sale of whiskey, sentenced to four months in jail, and fined $100.

In his petition for a writ of error to this court, he assigns two errors. The first is that the trial court erred in overruling his motion to set aside the verdict on the ground that the evidence was insufficient to sustain it, and the second is that the trial court erred in refusing to give an instruction requested by him.

It appears from the evidence that T. R. Hall, a regular employee of the Alcoholic Beverage Control Board on a salary basis, was seeking to apprehend violators of the Alcoholic Beverage Control law in Lynchburg and vicinity. On February 12, 1939, he employed two local persons, Russell Davidson and Norma Taylor, as informers to assist him in ascertaining violators of the law. Between six and seven p. m. on that day Hall, Davidson and Norma Taylor stopped at an old service station on the Old Forest road leading out of Lynchburg. Davidson asked Alvin Harris if he had any whiskey. Harris said that he did not, but, upon recognizing Davidson, he invited the three into the service station then used as a dwelling by Harris. He produced a pint of whiskey, and Davidson chipped some ice which seemed to have been convenient. Harris served Hall and each of his companions drinks in glasses. Hall took $2 out of his pocket and asked Harris how much he owed him, to which Harris replied that he would not take any money from him but that he could give the money to Davidson. Norma Taylor and Hall went out of the station. Hall stated that, while standing on the outside looking through a peephole in the glass door, he saw Davidson give Harris the $2 and receive some change from him. In a few minutes Davidson joined Hall and Norma Taylor in the car, and gave Hall 75 cents in change and the partly-filled bottle of whiskey. Hall immediately put an identifying label on the bottle, and later, while testifying, offered it as an exhibit before the jury.

The accused contends that Hall's testimony should be rejected as unworthy of belief. The vital issue in the case was whether the accused gave the whiskey to Hall and his companions, or whether he sold it to either of them. On this issue the evidence is in charp conflict.

The accused admitted that he was engaged in no business; that he was driving a fine automobile but did not own it; that for two years he had been living in a building formerly used as a service station; and that he had had the glass in the entrance door painted, leaving a square peephole which enabled him from the inside to see anyone standing near the door on the outside; that on the evening in question he had served whiskey to two strangers and a mere acquaintance; and that after the three had taken a drink Hall had offered to pay the accused; and, upon his refusal to accept the money, Hall had given $2 to Davidson and left the building. The accused denied that he accepted any money from Davidson, but admitted that Davidson had left the building with the whiskey in his possession. The accused claimed that he gave the whiskey to Davidson in return for a favor which Davidson had rendered him sometime the previous year.

Davidson's testimony is corroborative of the testimony of the accused. However, he admits that, when he joined Hall and Norma Taylor in the automobile, he gave Hall 75 cents in change and the bottle containing the whiskey; but he emphatically denies receiving the 75 cents from Harris.

Norma Taylor testified that she did not see Hall give any money to Davidson in the building, nor did she see Davidson give any change to Hall. She admitted that Davidson brought the bottle, partly filled with whiskey, into the automobile. She further said that Hall preceded her out of the room where they had been drinking, and that he did not pause to look through the peephole in the glass door.

H. B. Scruggs testified that he was in the room during the entire time that Hall and his companions were there,

and that Hall did not give Harris or Davidson any money. On this point he contradicts Hall, Davidson and the accused.

■ This synopsis of the testimony of the witnesses, with the attendant circumstances, reveals a sharp conflict in the evidence, and hence raises an issue which the trial court properly submitted to the jury.

■ The accused contends that Hall's testimony is incredible on the ground that the peephole in the door was too high for Hall, standing on the outside, to see anything that transpired within the building. The Commonwealth introduced several witnesses, who testified that the peephole had been changed and raised several inches after the date Hall testified before the police justice of the city of Lynchburg. A number of witnesses, called by the accused, testified that on the date of the trial in question the painting on the glass door had not been changed and that the peephole was in the same position it was in on February 12, 1939. Again a conflict in the evidence was presented, and hence the trial court committed no error in leaving this, as well as all other questions of fact, to the jury.

The second assignment of error is based on the refusal of the trial court, at the request of the accused, to grant the following instruction: "The Court further instructs the jury that the testimony of a paid detective who invites the commission of crime in order to detect the commission thereof is of a kind with that of a person in interest and should be scrutinized closely and received with great caution."

■ The question presented by this assignment of error, involving the testimony of an officer of the State, was discussed at some length in *Guthrie* v. *Commonwealth*, 171 Va. 461, 198 S. E. 481, 119 A. L. R. 683. It was there stated that a conviction would not be sustained where an officer had induced an otherwise innocent person to commit the crime charged, but where the crime had been already concocted, and all the officer did was to invite the exposure of that which already existed in overt shape, such an officer would not be an accomplice of the seller. We said: "Of

course, there can be no seller of any article without a purchaser. In the first two Virginia cases cited (*Crosby* v. *Commonwealth,* 132 Va. 518, 110 S. E. 270; *Faulkner* v. *South Boston,* 139 Va. 569, 132 S. E. 358), without the express mandate of a statute we held that purchasers of liquor illegally sold were accomplices of the seller. But in neither of those cases was the purchaser an officer of the Commonwealth employed to detect violations of law. The general test to determine whether or not a witness is an accomplice is to determine whether he could be indicted for the same offense."

The accused relies upon the case of *Walker* v. *Commonwealth,* 132 Va. 819, 823, 111 S. E. 274, 276, in which a similar instruction was under consideration. Judge Sims, speaking for the court and to the point, said: "Without entering upon a consideration of the subject of what may be all of the reasons for the rule enunciated by the instruction as offered, we deem it sufficient to say that the instruction, as given, seems to us to be very clear in its meaning, and rather more favorable to the accused than in the form in which it was offered. Certainly, we perceive nothing harmful to the accused in the modification made."

The detective in that case, as appears from an examination of the companion case of *Rudd* v. *Commonwealth,* 132 Va. 783, 111 S. E. 270, was not an officer of the Commonwealth. He was a private detective employed and paid by a group of private citizens to investigate conditions "in the city with a view of ascertaining whether violations of law existed, and, if so, what violations."

The facts in the present case are that T. R. Hall was an officer of the Commonwealth, charged with the specific duty of apprehending violators of the Alcoholic Beverage Control law, hence the principles announced in the case of *Guthrie* v. *Commonwealth, supra,* are controlling.

Norma Taylor, a witness called by the accused, testified that she was employed by Hall as an informer to show him bootleg places in Lynchburg, that she did not know that Harris was selling whiskey but "a man at the roundhouse

told us to go there and try." She, with Hall and Davidson, drove up to the house in which the accused was living and asked for a drink, with the result as heretofore stated.

The evidence does not show that the accused was unduly enticed or induced to make the sale. According to the evidence for the Commonwealth, the accused was given an opportunity to complete by sale the crime already concocted.

The judgment of the trial court is affirmed.

*Affirmed.*