STATE OF WEST VIRGINIA

*v.*

ALBERTA HAMRICK

(No. 13745)

Decided July 15, 1977.

*Allan N. Karlin and Franklin D. Cleckley* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *John L. MacCorkle,* Assistant Attorney General, for defendant in error.

HARSHBARGER, JUSTICE:

Alberta Hamrick was found guilty of voluntary manslaughter upon her trial in Monongalia County Circuit Court for murdering her six-weeks old son.

Alberta Hamrick, a twenty-six year old woman of very limited intelligence, a poor, uneducated, non-verbal resident of rural West Virginia, lived in a two-room frame house with water, but no bathroom. The house had only recently been occupied by her and her husband. It was a great improvement over their former dwelling because

at least the new abode had no great holes in the roof, according to a social worker who attended Mrs. Hamrick before and after her baby was born.

Mr. and Mrs. Hamrick had no crib for their babe. He laid in a pasteboard box, *kept* beside his parents' bed. When he died, doctors at the hospital where he was pronounced dead reported their suspicions of child abuse to the police and performed an autopsy which revealed that the child died of subdural hemorrhage. The next day a state trooper asked the Hamricks to the local state police barracks for questioning, and they went.

Policemen interrogated and extracted statements from both parents. Then they read Mrs. Hamrick her rights, she waived counsel and admitted to the two state troopers questioning her that, in the troopers' words, she had hit the baby with her hand when he was crying and she was dizzy from having taken her birth control pill. She signed a second statement to this effect.

Counsel claims four errors were committed by the trial court:

1. It failed to instruct the jury that specific intent to kill must exist in order for a jury to find a defendant guilty of voluntary manslaughter

2. It did not set aside the verdict or direct acquittal because of insufficient evidence.

3. It instructed that state policemen's actions in interviewing witnesses and persons charged with crime should not be attacked in court unless there is evidence of police impropriety.

4. It refused to permit defense counsel to cross-examine a police officer in the jury's presence about the manner in which Mrs. Hamrick's alleged confession was obtained by him.

The state attorney general, responsible for representing the state on appeal here, confessed that the court's failure to include in its instructions that voluntary manslaughter requires a specific intent to kill was reversible

error. We agree. *State v. Blizzard,* 152 W. Va. 810, 166 S.E.2d 560; *State v. Duvall,* 152 W. Va. 162, 160 S.E.2d 155 (1968); *State v. Reppert,* 132 W. Va. 675, 52 S.E.2d 820 (1949); *State v. Foley,* 131 W. Va. 326, 47 S.E.2d 40 (1948); and *State v. Barker,* 128 W. Va. 744, 38 S.E.2d 346 (1946).

We need not comment about the sufficiency of the evidence to support the verdict. The improper instruction necessitates reversal, and spares us evaluation of the jury's judgment.

However, the court's other objectionable instruction and its prohibition of cross-examination of the police officer who took defendant's alleged confession, require comment.

The court instructed the jury ". . . State police are specifically authorized and empowered by statute in this State, and the duties of their office require them to arrest persons charged with the violation of any law of this State and to investigate such charges by interviewing witnesses as well as the persons charged with the commission of said crime and *that such acts on their part should not be attacked in Court unless it appears by the evidence that they have improperly performed said duties.*" (Emphasis added.)

The instruction is obviously erroneous because it directs the jury to give extra weight to an officer's testimony.

*State v. Vest,* 98 W. Va. 138, 126 S.E. 587 (1925), holds that an instruction about the testimony of the accused, advising the jury to consider his interest in the result of the case as creating bias or prejudice, is not proper:

> It has been held that it is erroneous to charge the jury that the testimony of a witness interested or prejudiced should be scanned with care or be received with great caution or distrust; or that a disinterested witness is entitled to more credit than an interested witness." 98 W. Va. at 141, 126 S.E. at 588.

*See also, State v. Green,* 101 W. Va. 703, 133 S.E. 379 (1926); and *State v. Kessinger,* 144 W. Va. 209, 107 S.E.2d 367 (1959).

Interestingly, most questions arising from jury instructions regarding the weight and credibility of police testimony go to the issue of whether the jury may be instructed to scrutinize an officer's testimony because of the officer's potential bias against the accused. In *Bush v. United States,* 375 F.2d 602 (D.C.Cir. 1967) the court held that it was not error for the trial court to refuse an instruction that the uncorroborated testimony of a police officer must be *viewed with suspicion and acted upon with caution:*

> The law has recognized that some witnesses, the accomplice and informant, for example, should in some circumstances be the subject of a cautionary instruction when requested. But it would be a dismal reflection on society to say that when the guardians of its security are called to testify in court under oath, their testimony must be viewed with suspicion. This would be tantamount to saying that police officers are inherently untrustworthy. The cure for unreliable police officers is not to be found in such a shot-gun approach." (Footnotes omitted.) 375 F.2d at 604.

The court noted that the officer was subjected to rigorous cross-examination. *See also Golliher v. United States,* 362 F.2d 594 (8th Cir. 1966); *Harris v. Commonwealth,* 174 Va. 486, 6 S.E.2d 678 (1940), and *Robinson v. Commonwealth,* 118 Va. 785, 87 S.E. 553 (1916).

Instructing the jury that witnesses are presumed to tell the truth is generally held to be improper. "Under certain circumstances, such as where the presumption that witnesses told the truth operated exclusively in favor of the prosecution's witnesses, it has been held reversible error to instruct the jury that such a presumption existed . . ." 8 A.L.R. Fed. 319, 321. In *United States v. Johnson,* 371 F.2d 800 (3rd Cir. 1967), defendant made an objection to the instruction "If you find the

presumption of truthfulness to be outweighed as to any witness, you will give the testimony of that witness such credibility, if any, as you think it deserves." The government's case was based entirely on the oral testimony of its witnesses. The defendant did not take the stand. The court found reversible error because the instruction created a presumption of truthfulness of the government's witnesses and thereby diluted the presumption of defendant's innocence.

The reverse of the *Bush* proposition is also true: police officers' testimony is not accorded *greater* weight than other witnesses' evidence.

Error was also committed by the trial court when it sustained objections to questions to one of the troopers about the circumstances under which the statements from Mrs. Hamrick were obtained. Cross-examination of the troopers about the confession was completely proper and should have been allowed. *See, Davis v. Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Hoffa v. United States,* 385 U.S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966); *State v. Plantz,* 155 W. Va. 24, 180 S.E.2d 614 (1971).

The lack of proper *Miranda* compliance was not advanced as error; but our examination of the total record reveals many *Miranda* violations that clearly required exclusion of Mrs. Hamrick's confession. *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

First, the state trooper who investigated the hospital report of suspected child abuse witnessed the autopsy on the baby, and knew the cause of death was subdural hemorrhage that results generally from trauma. He also knew that Mr. and Mrs. Hamrick brought the baby to the hospital. They were, then, undoubtedly suspects when he asked them the next day to come to the police barracks. Their *Miranda* rights should have been given them before questions began. *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964).

Second, the interviews at the barracks were "custodial", and before being interrogated (absent the warning

to which they were entitled as suspects) the Hamricks should have been given their rights. *See, United States v. Pierce,* 397 F.2d 128 (4th Cir. 1968); *State v. Fortner,* 150 W. Va. 571, 148 S.E.2d 669 (1966); *People v. Golwitzer,* 52 Misc.2d 925, 277 N.Y.S.2d 209 (1966).

Our third objection to the confession has nothing to do with the mechanics of time and place of administering the rights. It concerns the whole philosophy enunciated in *Miranda* and with which we agree.

> We understand the teaching of Miranda to be that one confronted with governmental authority in an adversary situation should be accorded the opportunity to make an intelligent decision as to the assertion or relinquishment of those constitutional rights designed to protect him under precisely such circumstances." *U.S. v. Dickinson,* 413 F.2d 1113, 1114 (7th Cir. 1969).

Alberta Hamrick would find it impossible to understand the paragraph from *Dickinson*. She could not even spell "Hamrick" correctly on the statements and waiver of rights the police wrote and she signed. Our great task is to attempt to guarantee that the mentally infirm who come into an adversary situation with government, have *every protection afforded them that those of ordinary mental fortune would have*. Our courts are charged with measuring each confession by this guide.

We need no sociological studies to know that the law enforcement authority of government works most efficiently when it operates upon the poor, disadvantaged or ignorant people among us.

Knowledgeable citizens confronted with criminal charges call their lawyers at the first hint of trouble; and the knowledgeable criminal knows his way around inside the system.

But the disenfranchised or incompetent whose troubles are born of passion or poverty or ignorance cannot cope with authority. Until very recently in our history as a nation they had no chance. They were brutalized by

the very system that seeks as its apex the antithesis of savagery, civility.

*Miranda* started a change. We continue it, in West Virginia, by this decision in which we hold that law enforcement authorities cannot elicit admissible statements from persons suspected of crimes who because of mental condition cannot knowledgeably and intelligently waive their right to counsel.

Mrs. Hamrick is entitled to a new trial.

*Reversed and remanded.*