289 S.E.2d 720

**STATE of West Virginia**

v.

**Douglas ADKINS.**

**No. 14667.**

Supreme Court of Appeals of West Virginia.

March 26, 1982.

David Hill, Hurricane, for plaintiff in error.

Chauncey H. Browning, Atty. Gen. and S. Clark Woodroe, Asst. Atty. Gen., Charleston, for defendant in error.

McHUGH, Justice:

This case is before this Court on an appeal from a final order of the Circuit Court of Lincoln County, entered on August 4, 1978, denying the defendant Douglas Adkins' motion to set aside the verdict and award him a new trial. Douglas Adkins was convicted after a jury trial of the crime of first degree murder of Idona Baker. We find it necessary to reverse the judgment of the Circuit Court of Lincoln County on the basis of one of the errors assigned and address other errors assigned on this appeal that may recur at any possible retrial of the defendant. Relevant facts appear in context in the opinion.

I

The defendant assigns as error the trial judge's refusal to direct a verdict of acquittal due to variance between the indictment and proof in the case. He argues that he was indicted as a principal in the first degree and that the evidence adduced at trial, taken in the light most favorable to the State, proved only that he was an aider and abettor.

Adkins was indicted by a Lincoln County grand jury on the form indictment for murder provided by *W.Va.Code*, 62–9–3 [1931]. At his trial, however, the only evidence placing him at the scene of the crime, or otherwise indicating his involvement in the crime, was his own confession. Adkins told the police that he had shot at the victim and missed. He said that he then gave the gun to one of his cohorts, David Mooney, who shot and killed Idona Baker. The defendant argues that this proof, at

most, showed him to be an aider and abettor, not a principal in the first degree.

In *State v. Bennett*, 157 W.Va. 702, 203 S.E.2d 699 (1974), this Court held, at syllabus point 9: "An accused who is indicted solely as a principal in the first degree is entitled to a directed verdict of acquittal upon proof by the State that he was only a principal in the second degree." That case was, however, overruled in *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980), where this Court held:

1. With regard to all cases in which the trial shall commence after the date on which this opinion is handed down by this Court the prior common law rule requiring that aiders and abettors or accessories before the fact be indicted as such is abolished and, hereafter, a general indictment as a principal in the first degree shall be sufficient to sustain a conviction as an aider and abettor or as an accessory before the fact.

2. Where under prior case law a criminal defendant was entitled to be indicted as an aider and abettor in order to be convicted as such, well established prohibitions against *ex post facto* changes in either procedural or substantive criminal law require that the defendant be allowed the benefit of the common law rule in effect at the time she was tried.

Syl., *State v. Petry, supra. State v. Petry,* by its terms, does not apply to the case presently before us because the trial in this case commenced prior to the decision in that case. The defendant's assignment of error must, therefore, be analyzed under *State v. Bennett, supra.*

In *State v. Bennett* the defendant was convicted of attempted armed robbery. The indictment in the case charged him as the sole perpetrator of the crime. The proof at trial, however, showed Bennett to have been an aider and abettor. The theory underlying this Court's reversal of Bennett's conviction was that the indictment did not provide valid notice under *W.Va. Const.* Art. III, § 14, of the "character of the accusation with which he is charged." 157 W.Va. at 708, 203 S.E.2d at 703.

This Court, in *State v. Bennett*, also considered the defendant's argument that the trial court erred in refusing to grant his motion for an acquittal at the close of the State's case. It was noted: "This point is so interconnected with the charge of 'material variance' that it perhaps represents a difference almost without distinction. Nevertheless, the court should have directed a verdict of acquittal also upon this assignment." 157 W.Va. at 710, 203 S.E.2d at 704. This Court, however, went on to note:

Code 1931, 61–11–14 permits the State to take additional prosecutorial action against the defendant Bennett. (Citations omitted). However, as to the charge for which the defendant was convicted, he has been once placed in jeopardy and he is entitled to be discharged from further prosecution as the alleged perpetrator of the crime of attempted armed robbery....

*Id. W.Va.Code,* 61–11–14 [1931], provided:
A person acquitted of an offense, on the ground of a variance between the allegations and the proof of the indictment or other accusation, or upon an exception to the form or substance thereof, may be arraigned again upon a new indictment or other proper accusation, and tried and convicted for the same offense, notwithstanding such former acquittal.

*State v. Bennett,* therefore, held that although the defendant was entitled to a judgment of acquittal on the charge that he perpetrated the crime of attempted armed robbery, he could be retried under a new indictment for the crime of aiding and abetting an attempted armed robbery.

*State v. Petry, supra,* which overruled *State v. Bennett,* specifically held "that the defendant be allowed the benefit of the common law rule in effect at the time she was tried." In the case before this Court *State v. Bennett* requires us to find that the trial judge erred in refusing to grant the defendant's motion for a directed verdict of acquittal due to a variance between indictment and proof. *State v. Bennett,* however, would also allow a new indictment and trial of the defendant for aiding and abetting the murder of Idona Baker

even though retrial on the charge of being the perpetrator of the crime would be prohibited. This would be the end of our consideration of this assignment of error but for the intervening case of *State ex rel. Dowdy v. Robinson*, 163 W.Va. 154, 257 S.E.2d 167 (1979).

In *State ex rel. Dowdy v. Robinson* the defendant was first charged by indictment with having burglarized a building at 220 2nd Street in Huntington. At his first trial the judge granted a motion for acquittal after the proof offered by the State showed that the actual location of the building which was broken into was 220 22nd Street. Dowdy was then indicted again and the new indictment recited the correct street address. Dowdy sought a writ of prohibition in this Court to prevent a retrial under the second indictment. The majority of this Court held, in syllabus point 2 of that case: *"W.Va.Code,* 61–11–14 [1923] is unconstitutional because it provides for multiple prosecutions of the same defendant for the same offense after an acquittal in contravention of *U.S. Const.* Amend. V and *W. Va. Const.,* art. 3, § 5." *State ex rel. Dowdy v. Robinson* was not discussed in *State v. Petry, supra.* The holding in *State ex rel. Dowdy v. Robinson* initially appears to prevent the retrial of the defendant in this case under the *State v. Bennett* decision. Closer examination and reconsideration of those cases leads us, however, to reject that result.

The majority's holding in the second syllabus point of *State ex rel. Dowdy v. Robinson* was explained in the text as follows:

This statute allows multiple prosecutions of the same defendant for the same offense and expressly provides for a second prosecution after an acquittal in violation of *U.S. Const.* Amend. V and *W.Va. Const.,* art. 3, § 5 and, therefore, is unconstitutional. As we said earlier, different action by the trial judge, e.g. striking the street number from the indictment or granting a mistrial for manifest necessity, might have avoided a successful plea of double jeopardy in the second trial. Law, however, is a technical creature and the Supreme Court has

accorded magic to a directed verdict of acquittal which we cannot escape.

163 W.Va. at 160, 257 S.E.2d at 171. This opinion is correct in holding the statute to be unconstitutional insofar as the statute could be read to permit a retrial in a case involving a variance between indictment and proof when the prior acquittal was based in fact on a resolution of some or all of the factual merits of the case. The holding in *Dowdy,* however, was overbroad.

■ The label that a trial judge, or a statute, places upon the termination of a criminal case is not controlling upon review of the case on a double jeopardy challenge. The designation of the order terminating the case as an "acquittal" is not binding on the reviewing court:

[W]hat constitutes an 'acquittal' is not to be controlled by the form of the judge's action. (Citations omitted). Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, or some or all of the factual elements of the offense charged.

*United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354–1355, 51 L.Ed.2d 642, 651 (1977). In a footnote to the above quoted text, the Supreme Court of the United States said: "The Court must inquire whether 'the ruling in [defendant's] favor was actually an "acquittal" even though the District Court characterized it otherwise.' *United States v. Wilson,* 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975)." *Id.*

As was noted in a dissent in *State ex rel. Dowdy v. Robinson:*

The majority errs in assuming that a judgment of acquittal granted by the court upon motion of the defendant will automatically bar a retrial. The bar comes into play only if the judgment of acquittal is based on the trial court's determination that the government has failed in its proof of an essential element of the offense.

163 W.Va. at 166, 257 S.E.2d at 174. *See also State ex rel. Watson v. Ferguson,* 166 W.Va. 337, 274 S.E.2d 440 (1980); *State ex rel. Kincaid v. Spillers,* 165 W.Va. 380,

268 S.E.2d 137 (1980); *State ex rel. Betts v. Scott*, 165 W.Va. 73, 267 S.E.2d 173 (1980).

■ In the case presently before us Adkins was indicted as the "sole perpetrator" of the crime of murdering Idona Baker, i.e., as a principal in the first degree. The evidence, viewed in the light most favorable to the State, however, showed only that Adkins had aided and abetted Mooney in the commission of the crime. Under *State v. Bennett, supra,* Adkins was therefore entitled to a directed verdict of acquittal due to a variance between pleading and proof. The mere designation of that order as an "acquittal," however, does not in and of itself bar a retrial of the defendant. As noted in footnote 15 of *State ex rel. Watson v. Ferguson, supra,* "The critical question is under what circumstances the first trial aborted and in particular whether it was aborted by reason of prosecutorial or judicial 'bad faith,' including evidentiary insufficiency." 166 W.Va. at 347, 274 S.E.2d at 445. In the case before us the "acquittal" did not arise from any evidentiary insufficiency or any other prosecutorial or judicial "bad faith." *Id.* Similarly, the "acquittal" in this case was not based upon "a resolution ... of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co., supra.* We are therefore of the opinion that double jeopardy does not bar a retrial of the defendant upon an indictment charging him as an aider and abettor in the murder of Idona Baker.

Had the defendant been acquitted on a resolution of some or all of the elements of the crime our result here would be different. If that were the situation *W.Va.Code,* 61–11–14 [1931], could not be read to constitutionally permit a retrial of the defendant.

*W.Va.Code,* 61–11–14 [1931], however, must be read *in pari materia* with *W.Va. Code,* 61–11–13 [1931], which provides:

A person acquitted by the jury upon the facts and merits on a former trial may plead such acquittal in bar of a second prosecution for the same offense, notwithstanding any defect in the form or substance of the indictment or accusation on which he was acquitted.

■ These statutory provisions were first enacted by the Virginia Legislature in 1848 *Va.Laws* c. 120. West Virginia incorporated the Virginia provisions in our 1868 *Code. W.Va.Code,* c. 152, § 14–15 [1868]. The Virginia Supreme Court of Appeals considered the effect of these two statutory provisions in *Burress v. Commonwealth,* 27 Gratt. 934 (1876):

Section 15 [equivalent of *W.Va.Code,* 61–11–13 [1931]], gives a right to plead an acquittal on a former trial in bar of a second prosecution for the same offense, notwithstanding any defect in the form or substance of the indictment on which he was acquitted, provided, or on condition that, the acquittal was upon the facts and merits of the case....

The section does not make the variance immaterial. The accused must be acquitted upon that ground, if no other.... But Section 15 authorizes an acquittal in such case upon the merits, instead of upon the ground of variance; and if acquitted upon the merits makes the acquittal a bar to a second prosecution for the same offence.... Section 16 [equivalent of W.Va.Code, 61–11–14 [1931]], does not vary the case. It does not relate to pleading, but is merely declaratory of the common law, that an acquittal on the ground of variance is not a bar to a second prosecution for the same offence; and therefore declares that a person acquitted upon that ground may be arraigned upon a new indictment, &c: that is, it merely declares that the common law on this subject remains in full force, except so far as section 15 creates an exception.

27 Gratt. at 942–943. The Double Jeopardy Clause, as with these statutes, originated in the common-law. *See United States v. Wilson,* 420 U.S. 332, 342, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232, 241 (1975). The statutory structure created by *W.Va.Code,* 61–11–13 [1931], and *W.Va.Code,* 61–11–14 [1931], is not inconsistent with the principles embodied in the Double Jeopardy Clauses of the West Virginia and United

States Constitutions. *U.S.Const.*, Amend. V; *W.Va.Const.*, art. 3, § 5. The statutes, in fact, originated in the common-law as did the constitutional double jeopardy provision and the statutes incorporate the same law to achieve the same end, i.e., to bar a retrial after a judgment of acquittal is entered upon a determination of the merits of a case. Syllabus point 2 of *State ex rel. Dowdy v. Robinson, supra*, was therefore overbroad and is hereby overruled.

## II

Three people were separately indicted for the crime of murdering Idona Baker: the defendant Adkins, David Mooney and Tommy Cole. Adkins was tried first. After his conviction David Mooney entered a plea of guilty to second degree murder. Tommy Cole was then brought to trial and Mooney testified at his trial. It is alleged that prior to the defendant's trial Mooney had confessed to the murder and had maintained that the defendant had been a party to the crime. At Cole's trial, however, it is alleged that Mooney testified that the defendant Adkins was not present when the murder occurred and did not participate in the crime. The defendant argues that this change in Mooney's version of the events is newly discovered evidence warranting a new trial under *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979). It is not necessary in this opinion to consider the application of *State v. Frazier* to the facts of this case as it is reversed on other grounds.

There is, however, a subsidiary question of whether Mooney's testimony exculpating the defendant should be allowed into evidence on retrial of Adkins. There is some West Virginia case law which bears upon this issue. A similar question was considered by this Court in *State v. Poe*, 69 W.Va. 260, 71 S.E. 177 (1911), where it was held, at syllabus point 1: "Evidence that a person made a statement that he, and not the accused, committed the crime, would not be admissible on a trial of the accused, and therefore is not grounds for a new trial." This rule was in accord with the general hearsay rule:

> The general rule followed by most of the authorities on the subject is that a con-

fession by a third person that he committed the crime which the defendant is charged with having committed, even though it is made in expectation of imminent death or by a person jointly indicted with the accused, is not admissible as substantive evidence tending to exculpate the accused unless it constitutes a part of the res gestae.

29 Am.Jur.2d *Evidence* § 541 (1967).

In *State v. Poe, supra*, the defendant had been convicted of stabbing one W. A. Rogers. At a hearing on his motion for a new trial Mary A. Walters testified that her son, Luther Rogers, had confessed to her that he had committed the crime. This Court said, at 69 W.Va. at 262–263, 71 S.E. at 178:

> Luther Rogers was present when his mother gave this testimony ... and said nothing. He did not corroborate his mother. He was not called to state that he could, or would, give such evidence. He did not so state under oath or even make an unsworn statement that he could or would give such evidence.... Luther Rogers was arrested, and on legal examination on the charge was discharged. Can it be expected that he would on a retrial give evidence to send himself to the penitentiary? He could not be forced to do so. That confession would not be evidence, and we have no assurance that he would give evidence to send himself to the penitentiary. Shall we set aside a verdict on such a ground? This application for a new trial does not bear the hue of candor and sincerity, but seems to rest on fabrication. It does not appeal to a court of justice.

In *State v. Poe* this Court essentially held that the mother could not testify at a retrial that her son had, extrajudicially, confessed to the crime. That holding was in accord with general hearsay rules. The case is different from the one before us in that, here, the confessor will, allegedly, testify to the facts himself in court. Hence, there is no hearsay problem as there was in *State v. Poe*. Also, there is not the Fifth Amendment problem here that was alluded to in *State v. Poe*. Mooney has already confessed to the crime,

pleaded guilty and has been sentenced. He can no longer claim a privilege against self-incrimination because any further statements are no longer incriminating. He can be subpoenaed to testify at the defendant's retrial. *See generally State v. Simon*, 132 W.Va. 322, 52 S.E.2d 725 (1949).

 Upon the retrial of this case, if Mooney is called as a witness he should be allowed to testify as to facts within his knowledge. Such testimony would not be hearsay. We hold that a witness may testify at a criminal trial that he, the witness, and not the defendant was responsible for the crime for which the defendant is on trial. In this case Mooney has, evidently, offered two conflicting stories about the murder of Idona Baker. In his confession to the police he apparently said that the defendant Adkins had been involved in the crime. In his testimony at Cole's trial Mooney evidently said that the defendant Adkins had not been involved in the crime. Should Mooney be called as a witness at the defendant's retrial, he will be subject to cross-examination and impeachment. Such impeachment may be allowed based on prior inconsistent statements.

### III

█ The defendant argues that the trial court erred in admitting a statement which he gave to the police into evidence because his mental condition and retardation prevented him from knowingly and intelligently waiving his constitutional rights. This Court, in *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977), held, at syllabus point 1: "Confessions elicited by law enforcement authorities from persons suspected of crimes who because of mental condition cannot knowledgeably and intelligently waive their right to counsel are inadmissible."

This Court again addressed the issue in *State v. Boyd*, 167 W.Va. 385, 280 S.E.2d 669 (1981):

At the outset we note that in order for a waiver of constitutional rights to be effective it must be knowing and voluntary. Consequently, confessions elicited by law enforcement personnel from criminal suspects who because of mental condition cannot knowledgeably and intelligently waive their rights are inadmissible. [citing *Hamrick* ]. Even in the absence of psychiatric testimony that a criminal defendant was incapable of waiving his rights at the time a confession was made, courts must presume that a defendant did not waive his rights, and the prosecution's burden of overcoming this presumption is great. *See, e.g., State v. Mollohan*, 166 W.Va. 60, 272 S.E.2d 454 (1980). When, in addition to this judicial presumption, the defendant also offers evidence indicating that he was mentally incapable of understanding his rights or of appreciating the consequences of a confession, the State's burden of proving a knowing and voluntary waiver becomes great indeed.

167 W.Va. at 403, 280 S.E.2d at 682. *See also State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545, 553–554 (1981). In *State v. Boyd* the trial judge's admission of the confession was held to be error because expert testimony offered by the defendant "clearly established that the appellant could not have knowingly and voluntarily waived his rights." 167 W.Va. at 403, 280 S.E.2d at 682.

█ The *State v. Mollohan* decision cited in *State v. Boyd* turned on a totality of the circumstances test on the question of the voluntariness of the confession. It is the general rule that the intelligence of a person making a confession is but one factor to be considered in determining whether a waiver of rights was voluntary. The intelligence of the person confessing is not a controlling factor giving rise to a *per se* rule.

There is general agreement among the courts that a confession of crime is not inadmissible merely because the accused, who was not insane, was of less than normal intelligence, so long as the subnormality has not deprived the accused of the capacity to understand the meaning and effect of the confession. However, the fact that a confession was made by one whose mentality is at a lower than normal level is to be taken into

consideration and viewed as a factor indicating that the confession was lacking in voluntariness.

29 Am.Jur.2d *Evidence* § 573 (1967).

▮ In accord with *State v. Hamrick, supra,* and *State v. Boyd, supra,* we hold that where a person of less than normal intelligence does not have the capacity to understand the meaning and effect of his confession, and such lack of capacity is shown by evidence at the suppression hearing, it is error for the trial judge not to suppress the confession. However, where the defendant's lower than normal intelligence is not shown clearly to be such as would impair his capacity to understand the meaning and effect of his confession, said lower than normal intelligence is but one factor to be considered by the trial judge in weighing the totality of the circumstances surrounding the challenged confession. The standard on review of the trial judge's ruling on that issue was stated in the syllabus of *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978):

1. The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of all or a part of an offense were voluntary before such may be admitted into the evidence of a criminal case. (Citation omitted).

2. It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review.

3. A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.

These standards must be applied to the facts of the case presently before us.

The trial judge in this case did have a psychological evaluation of the defendant before him at the suppression hearing. That evaluation read, in part:

Psychological evaluation reveals Doug [Adkins] to be functioning in the moderate range of mental retardation with a Full Scale I.Q. of 49. Tests do not show mental illness....

It is our opinion ... that Doug Adkins is not mentally ill. He is moderately mentally retarded; however, he knows right from wrong. He is aware of the nature, gravity, and consequences of the crime for which he is charged. He is aware of the Court's proceedings. He is competent to stand trial and assist his lawyer in his defense. He will not benefit from hospitalization.

It is uncontested that the defendant was given *Miranda* warnings at least twice before he confessed to participation in the murder of Idona Baker. Such evidence was uncontradicted at the suppression hearing. The defendant also signed a written waiver of rights form. At the suppression hearing the State presented testimony by the psychiatrist who had examined the defendant and submitted the evaluation quoted above.

The defense called three lay witnesses at the suppression hearing who testified that they knew the defendant and believed him to be mentally retarded. The defendant also took the stand on his own behalf. On cross-examination the defendant was asked whether he had told the police that the reason he had given the murder weapon to Mooney was because he had been shot in the eye with a BB gun when he was a child. The defendant answered "See, I told him that and I made a mistake."

The trial judge held that the statement was made voluntarily and admitted it into evidence. On the basis of the suppression hearing evidence we do observe that the question as to the voluntariness of the confession was close. The trial judge's ruling on this question was not clearly against the weight of the evidence presented at that hearing. The psychological testimony and report presented by the State, as well as the defendant's own testimony at the hearing, would tend to support a finding that the defendant's below average intelligence did not so impair his capacity to understand the meaning and effect of his confession as to render it involuntary. On remand, however, the trial judge should allow the de-

fense to present further evidence on this issue should they so desire.

## IV

█ In this case a competency examination was ordered under *W. Va. Code*, 27–6A–1 [1977], and a report was filed with the Court. No finding of competency was made within five days after the receipt of the report as contemplated by *W. Va. Code*, 27–6A–1(d) [1977]. However, there is no showing of prejudice resulting from this failure.

A trial judge's failure to make a finding on the issue of a criminal defendant's competency to stand trial within five days after the filing of a report by one or more psychiatrists or a psychiatrist and a psychologist in compliance with *W. Va. Code*, 27–6A–1(d) [1977], will not be considered to be reversible error requiring a new trial absent prejudice to the defendant resulting from such failure.

Syl. pt. 1, *State v. Church*, 168 W.Va. 408, 284 S.E.2d 897 (1981).

The defendant also argues that he requested a competency hearing and that one was held but that the court did not rule on his competency after the hearing. The State argues that the hearing referred to was on the suppression of the defendant's confession on the ground that the defendant was not competent to waive his rights. The record tends to support the State's contention in this regard. The State goes on to argue that the trial judge's ruling that the defendant was competent to waive his rights was a sufficient finding on his competency to stand trial.

We do not consider this argument in detail since the case is reversed on other grounds. We do note, however, that if upon retrial the defendant moves for a competency hearing one should be held and the trial judge should make an independent finding upon that issue in compliance with *W. Va. Code*, 27–6A–1 [1977].

## V

█ On retrial the defendant should receive the benefit of the rule announced in *State v. Milam*, 163 W.Va. 752, 260 S.E.2d 295 (1979):

There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense.

Syl. pt. 2, *State v. Milam, supra*. In *State v. Milam*, and *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980), this Court held the defendant to be entitled to the benefit of the change announced in *State v. Milam* if the issue was properly raised at trial and preserved on appeal. We have also followed this rule of limited retroactivity in the related area of the burden of proof on the issue of self-defense. *State v. Gangwer*, 168 W.Va. 190, 283 S.E.2d 839 (1981).

The defendant in the case before us raised the insanity issue at his trial and argued the point on this appeal. He is, therefore, entitled to benefit from the change in law wrought by *State v. Milam* at his retrial.

## VI

█ At the defendant's trial a police officer testified that the defendant, David Mooney and Tommy Cole were homosexuals. The prosecutor referred to the testimony in his closing argument. The defendant claims that this was character evidence offered by the State when he had not put his character into issue. The State argues that the testimony is "merely descriptive, like the color of his hair." We hold that evidence regarding sexual predilections or conduct is not admissible at trial unless it is clearly relevant. Such evidence may be relevant if character is in issue. Such evidence may also be relevant to show bias or interest on the part of a witness during cross-examination.

For the reasons discussed in section I of this opinion, the judgment of the Circuit Court of Lincoln County is reversed and the case is remanded to that court for

**56**

further proceedings in accordance with this opinion.

Reversed and remanded.