State v. Cooley.

## THE STATE *v.* GEORGE COOLEY.*

## (*Knoxville.*  September Term, 1918.)

1. **INDICTMENT AND INFORMATION.**  Charge against individual, Bad check law.

Indictment for violation of Public Acts 1915, chapter 178, the bad check law, *held* against defendant as an individual, not as president of a grocery company. (*Post, pp.* 36, 37.)

Acts cited and construed: Acts 1915, ch. 178.

2. **FALSE PRETENSES.**  Bad check law, Gravamen of charge,

Gravamen of charge that defendant violated Public Acts 1915, chapter 178, the bad check law, is not the issuance of a check, but is the obtaining, with fraudulent intent, of money, or other property, or credit, by means of a check. (*Post, pp.* 37, 38.)

3. **STATUTES.**  Criminal statute.  Construction.

Construction of criminal statute which in many instances would defeat legislative purpose will not be adopted unless forced by express language. (*Post, p.* 38.)

4. **FALSE PRETENSES.**  Bad check law.  ''Of which he is the maker or drawer.''

Defendant violated Public Acts 1915, chapter 178, the bad check law, though he signed check for which he obtained goods as president of grocery company; statutory phrase "of which he is the maker or drawer" merely limiting application to persons obtaining money or property with fraudulent intent by check which they draw personally or in representative capacity. (*Post, pp.* 38-45.)

Acts cited and construed: Acts 1915, ch. 178.

---

*Authorities passing on the question as to whether mere drawing of check on a bank in which the drawer has no funds or credit and passing the same is false pretenses, are collated in notes in 17 L. R. A. (N. S.), 244; 27 L. R. A. (N. S.), 1032, 52 L. R. A. (N. S.), 919.

141 Tenn.—3

State v. Cooley.

Cases cited and distinguished: State v. Willis, 130 Tenn., 408; Kizer
v. State, 140 Tenn., ——; Milbrath v. State, 138 Wis., 354; State ex
rel. v. Standard Oil Co., 49 Ohio St., 137; Hempfling v. Burr, 59
Mich., 294.

FROM  WASHINGTON.

Appeal from the Criminal Court of Washington
County.—Hon. DANA HARMON, Judge.

WM. H. SWIGGART, JR., Assistant Attorney-General,
for the State.

PAUL E. DIVINE and D. M. GUINN, for appellee.

MR. JUSTICE McKINNEY delivered the opinion of the
Court.

Under chapter 178 of the Public Acts of 1915 of the
General Assembly of the State of Tennessee, the de-
fendant, George E. Cooley, was indicted for obtaining
goods and credit by giving a check on a bank in which
there were no funds to pay same.

On motion of the defendant the indictment was
quashed and the State has appealed and assigned errors.

The body of said act is as follows:

"Section 1. Be it enacted by the general assembly of
the State of Tennessee, that any person who shall ob-
tain, with fraudulent intent, money or other property
which may be subject of larceny, or who shall obtain
credit with like intent, by means of a check, draft or or-
der, of which he is the maker or drawer, which is not

paid by the drawee, shall be guilty of a misdemeanor if the amount or value is thirty dollars or less, if the amount or value is more than thirty dollars he shall be guilty and punishable as in the case of larceny, of such money or other property, or of anything of value obtained on such credit, unless payment of such check, draft or order after giving seven days' written notice mailed to the drawer's last known address, and the fact that such maker or drawer did not have on deposit or to his credit with the bank, person, firm or corporation upon which such check, draft or order is drawn sufficient funds to pay the same when presented unless such check or draft is paid or accepted when presented, shall be *prima-facie* evidence of fraudulent intent.

"Sec. 2. Be it further enacted, that all laws and parts of laws in conflict herewith be, and the same are, hereby repealed, and that this act take effect from and after its passage, the public welfare requiring it."

The indictment is in the following words:

"The grand jurors for the State and county aforesaid present and say that George E. Cooley on the 18th day of June, 1917, in the county aforesaid, unlawfully and feloniously did with fraudulent intent obtain money and other property consisting of meat and did obtain credit with like intent from the said H. H. Swadley by means of a check which he as president of the Pure Food Grocery Company drew for fifty dollars ($50), payable to H. H. Swadley, and which said check was not paid by the said Pure Food Grocery Company, or said George E. Cooley, and the said check having not been paid after the said George E. Cooley, as president of the said Pure Food Grocery Company, had been given seven

days' written notice as required by law, to make the same good, and the said George E. Cooley, nor the Pure Food Grocery Company, did not have on deposit or to his or its credit with the bank upon which check was drawn sufficient funds to pay the same when it was presented for payment. Against the peace and dignity of the State."

The fourth ground of the motion to quash was the only one relied upon by the defendant, and it is as follows:

"The acts of Tennessee, as to the issuance of checks which are not paid and as to which there are no funds to cover the same, does not by its terms or provisions cover or comprehend a check issued by a corporation, nor is it applicable to an agent of a corporation, acting for it, to compel any such agent to become or be a guarantor or surety for corporate business and transactions. Hence under the averments of the indictment no offense is charged as a matter of law, and no criminal liability exists."

The circuit judge found and adjudged:

"That said check law in question does not apply to corporations and checks issued by a corporation, and that in this instance the said George E. Cooley is indicted as president of the Pure Food Grocery Company, and that he is not indicted personally and cannot be held personally under the allegations of the indictment, and he therefore quashes said indictment and dismisses said defendant."

We think the learned circuit judge was in error in holding that the defendant was indicted as president of

the Pure Food Grocery Company, a corporation.   The indictment says:

"That George E. Cooley on the 18th day of June, 1917, in the county aforesaid, unlawfully and feloniously did with fraudulent intent obtain money and other property consisting of meat and did obtain credit with like intent from the said H. H. Swadley," etc.

It will thus be seen that it was George E. Cooley, individually, and not George E. Cooley, president of the Pure Food Grocery Company, that was charged with fraudulently obtaining money, meat, and credit, which is, as will be more fully shown later on, the gravamen of the offense.

The indictment then recites the method by which he fraudulently procured the property and credit, saying, "by means of a check which he as president of the Pure Food Grocery Company drew for fifty dollars ($50), payable to H. H. Swadley," and then charges that it was not paid by the Pure Food Grocery Company or by George E. Cooley after they had been given seven days' written notice, and that neither the Pure Food Grocery Company nor George E. Cooley had on deposit with the bank, upon which the check was drawn, sufficient funds to pay the same when it was presented for payment.

The gravamen of the charge against the defendant, as defined by the statute, is not the issuance of a check, but is the obtaining, with fraudulent intent, money or other property or credit by means of a check. The "bad check" is merely the prohibited means of accomplishing the fraud.   The legislative purpose was to prevent the obtaining of money or other property with fraudulent intent, and to protect owners

of property and money from being defrauded in such a way.

The legislative purpose to protect the public against fraud would not be wholly accomplished by construing the act to have no reference to the perpetration of a fraud by means of a check drawn by an officer of a corporation. The legislative purpose would be defeated in many instances by such construction, and that construction will not therefore be adopted by the court unless it is forced by the express language of the statute.

There is no language in the statute which exempts from its operation a person who shall obtain money or property with fraudulent intent by means of a check which he draws or makes in a representative capacity. If he draws the check as the representative or officer of a corporation, he is none the less the maker or drawer within the contemplation of this statute, and the fraud which the statute is designed to prevent is personal to him. There is no doctrine of agency in the criminal law which will permit an officer of a corporation to shield himself from criminal responsibility for his own act on the ground that it was the act of the corporation and not his personal act.

In construing this statute, the phrase "of which he is the maker or drawer" is to be given its literal meaning and the words "maker or drawer" are to be understood in their usual and ordinary sense, and are not to be given the technical meaning imputed to them when used in the negotiable instruments law. This rule of construction is clearly to be followed if it is necessary to render the statute effective to accomplish the legislative purpose, i. e., the suppression of the practice of

State v. Cooley.

fraudulently obtaining money or property by means of a bad check. If a person draws or makes a check and uses it with fraudulent intent to obtain money or credit, and the check is not paid in any of the ways referred to in the statute, every element of the crime defined by the statute is present, and it is immaterial whether he drew the check or made it personally or in a representative character. The phrase in question, "of which he is the maker or drawer," should therefore be construed merely to limit the application of the statute to persons who obtain money or other property with fraudulent intent by means of a check which he himself makes or draws, regardless of whether the person in question makes or draws the check personally or in some representative capacity. State v. Willis, 130 Tenn., 408, 409, 170 S. W., 1030; Harrison Kizer v. State, 140 Tenn., ——, 205 S. W., 423, opinion filed August 6, 1918.

In Kizer v. State, supra, the court had under consideration the constitutionality and construction of the statute of 1917 prohibiting the transportation of intoxicating liquors. The statute prohibited the receipt of liquors which had been received directly or indirectly "from a common or other carrier." An effort was made to limit the phrase "common or other carriers" to "carriers for hire," the basis for the contention being that in the law of bailments, "carrier" had taken on a special and limited meaning including only carriers for hire, common and private. This court refused to attribute the limited and special meaning of the phrase to its use in the statute under consideration, saying that, in enacting the statute, the legislature was not concerned with the law of bailments, but was taking a

step toward the further suppression of the liquor traffic. The court held that the words "other carrier" in the statute included all who carried intoxicating liquors whether for hire or not. In so holding, the court said:

"It is next contended that the phrase 'common or other carrier,' in the first and second sections of the act, means a carrier for hire; and that the idea of liability of one who carries not for hire is excluded. The argument would assign a technical meaning to the word 'carrier,' confining it to common or public carriers, and to private carriers for hire.

"It may be that in the law of bailments there are but two kinds of carriers, common and private, each being a carrier for hire; but the legislature was not concerned with the regulation of any phase of the law of bailments, but with the further apprehension of the liquor traffic. It did not intend to prevent movements of liquor by 'carriers for hire' only." *Kizer* v. *State,* 140 Tenn.,——, 205 S. W., 423, decided August 6, 1918.

In the case above cited and quoted from, the court refused to hold that a limited and special meaning which has attached to a given phrase or word when used in some special branch of the law follows the word or phrase when used in a statute affecting some other and distinct branch of the law.

In *State* v. *Willis,* 130 Tenn., 408, 409, 170 S. W., 1030, the court had under consideration the meaning of the word "bank" as used in chapter 44 of the Public Acts of 1911, providing for the punishment of officers in charge of a "bank" who should receive deposits therein, knowing or having good reason to believe the bank to be insolvent. It was contended by the accused Willis

State v. Cooley.

that the word "bank," as used in the statute, did not apply to savings banks, trust companies, etc. In over-ruling this contention, the court was controlled by the proposition that the purpose of the legislature in enacting the statute was to protect all depositors "whether they placed their money in banks, savings banks, trust companies or private banks." The court said:

"Some cases are referred to from other jurisdictions in which the word 'bank' is given a very restricted meaning. It is not necessary to consider the propriety of these decisions, for we are not able to attach to the word 'bank,' as used in our statute, any such narrow definition.

"The purpose of chapter 44 of the Acts of 1911 ob-viously was to protect depositors. It was intended to protect all depositors, whether they placed their moneys in banks, savings banks, trust companies, or private banks. The general assembly, we think, intended to legislate in regard to all institutions within its juris-diction that received deposits, and the word 'bank,' as used in this act, was intended to include all such in-stitutions.

"The purpose of the act of 1911 being to protect de-positors, and there being no reason to distinguish among depositors of banks, savings banks, and trust com-panies, and private banks, we must assume that the legislature intended the act for the protection of them all. Such being the case, the word 'bank' must be given a meaning broad enough to effectuate the intention of the lawmakers. When the intent of a statute is clear, general words will be expanded to effectuate that

purpose, if necessary." *State* v. *Willis*, 130 Tenn., 408, 409, 170 S. W., 1030.

The purpose of the legislature in enacting the statute now under consideration being to protect the public from fraud accomplished by the use of a check drawn by the person tendering it, the court should hold, as the State insists, that one who draws a check and accomplishes the designated fraud is within the statute, regardless of whether he drew the check on his personal account or in some representative capacity. In each case the fraud, which is the thing legislated against, is the personal act of the person drawing and presenting the check.

The statute is broad enough to cover the act of one who obtains money or property with fraudulent intent by means of a check which he has drawn on an account which is not his personal account but on which he is authorized to draw checks. The fact that such account is in the name of a corporation, and the person drawing the check is an officer of the corporation, should not relieve the latter from criminal responsibility for his fraud in using such a check to obtain money or property. An officer of the corporation should not be allowed to escape the consequences of a criminal act done by him, on the ground that it was an official act, and therefore not his, but the act of the corporation. 8 R. C. L. (Cr. L. section 17), p. 66; 7 R. C. L. Corp. section 485), p. 503.

In Ruling Case Law, vol. 7, p. 503, dealing with the subject of the criminal responsibility of officers for corporate acts, the author says:

"But an officer or agent cannot shield himself from criminal responsibility for his own act on the ground

that it was done in his official capacity as an officer of the corporation, nor can he assert that acts in form corporate were not his acts merely because carried out by him through the instrumentality of a corporation which he controlled and dominated and which he employed for that purpose.''

In the case of *Milbrath* v. *State,* 138 Wis., 354, 120 N. W., 252, 131 Am. St. Rep., 1012, cited by the authors of Ruling Case Law in support of the proposition above quoted, an officer of a corporation was held criminally liable for the misappropriation of funds which had been intrusted to the corporation. His defense that the corporation itself was an independent, responsible personality which intervened between himself as an officer of the corporation and the beneficiary of the trust fund was repudiated by the supreme court of Wisconsin, holding that the legal fiction of the personification of corporations has never been carried to the extent contended for by the accused in that case. In considering the personal liability of the officer of the corporation to the criminal law for the misappropriation done in the name of the corporation, the court said:

''The corporation is in such case a mere instrumentality through and by means of which the natural persons in control . . . carry out their acts.'' *Milbrath* v. *State,* 138 Wis., 354, 120 N. W., 252, 131 Am. St. Rep., 1012.

In the same case the court also said:

''In *State ex rel.* v. *Standard O. Co.,* 49 Ohio St., 137, 30 N. E., 279, 15 L. R. A., 145 [34 Am. St. Rep., 541], it was said that the legal fiction that a corporation is a person can never be urged to an intent and purpose

not within the reason and policy of that fiction. Cases not within the reason and policy of that fiction must necessarily be rare, and no general rule that we are aware of has been in that respect formulated. But it is safe to say that in a criminal prosecution against a person charged with an offense committed by him against the laws of the State he could not be heard to say in justification that he committed that offense in ·his official capacity as.officer of a corporation; nor could he assert that acts in form corporate acts were not his acts merely because carried out by him through the instrumentality of a corporation which he controlled and dominated in all respects and which he employed for that purpose. *Hempfling* v. *Burr,* 59 Mich., 294, 26 N. W., 496.''

In the case at bar, the defendant is charged individually with obtaining money, property, and credit from the prosecutor with fraudulent intent. It is averred in the indictment that the means employed to perpetrate this fraud was a check which he ''as president of the Pure Food Grocery Company drew for $50.'' It cannot be reasonably contended that, if the Pure Food Grocery Company had been a partnership of which the defendant was a member and whose name he had authority to sign to a check, he would not be the maker or drawer of the check within the contemplation of the provisions of this statute. To hold that the mere fact that the Pure Food Grocery Company was incorporated takes the case out of the statute would be to interpose the legal fiction of the corporation's personality in an instance not within the reason and policy of that fiction. The defendant should not be heard to say in this court that he committed the fraud in his official capacity as an

State v. Cooley.

officer of the corporation, and on that ground escape criminal responsibility for his act.

We are therefore of the opinion that the circuit judge was in error in quashing the indictment in this case, and the judgment of the circuit court is reversed and the cause remanded.