## MALKEMUS *v.* STATE.

### (*Nashville,* December Term, 1938.)

Opinion filed June 10, 1939.

JACK NORMAN, of Nashville, and CARLTON FRY, of Columbia, for plaintiff in error.

ERNEST F. SMITH, Assistant Attorney-General, for the State.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The defendant in this case has been convicted under section 11157 of the Code, known as the bad check law, given a maximum sentence of three years in the penitentiary, and appealed in error to this court.

We are unable to sustain the judgment of the court below because the evidence does not justify the conviction of defendant of the particular offense with which he was charged. In other words, there is a fatal variance between the indictment and the proof.

The defendant was the head of a corporation located at Nashville dealing in automobiles, new cars and used cars. The prosecutor, Massey, was the head of a corporation engaged in a similar business located at Lawrenceburg. The defendant and the prosecutor had considerable dealings between themselves, or between their corporations.

According to testimony of the prosecutor, defendant obtained from the prosecutor in October, 1937, a Dodge sedan car, to be sold by defendant on commission for prosecutor or prosecutor's concern. The defendant took the car to Nashville and the prosecutor hearing nothing from defendant, in about two weeks, prosecutor went to Nashville to investigate. The defendant at that time

wanted the prosecutor to let him (defendant) have a Pontiac car. Prosecutor declined to trust defendant with a Pontiac car until the latter paid for the Dodge. Defendant thereupon gave the prosecutor a check for $585 (which was subsequently dishonored), and prosecutor allowed the defendant to have the Pontiac car.

The substantial language of the indictment upon which this conviction rests is as follows:

"That L. R. Malkemus in said County heretofore, to-wit, on the 25 day of October, 1937, unlawfully, fraudulently, and feloniously, did obtain certain personal property, to-wit: one automobile, of the value of $585.00, from Pioneer Motor Company, a corporation, with fraudulent intent it the said corporation, to injure and defraud out of its said property, by means of a check of which he, the said L. R. Malkemus was then and there the maker, which said check is as follows:

" 'No. ———

" 'Dodge 2 door sedan serial No. 4577228 Motor No. D5-49474

Nashville, Tenn., October 25, 1937

Pay to the order of Pioneer Motor Company $585.00 ........Five Hunded Eighty Five and 00/100 Dollars For ———

The American National Bank

808 Broadway Branch

Nashville, Tenn.

Malkemus Motor Co.

87-3                    By L. R. Malkemus, Pres.'

which said check, was not paid by the drawee nor by said defendant, after he the said L. R. Malkemus had been given three days notice as required by law, against the peace and dignity of the State."

This indictment seems to us rather plainly to charge the fraudulent obtaining of the Dodge sedan by means of this bad check. The proof shows that the Pontiac car was of value less than $585. The check given by defendant is copied into the indictment as a part thereof and the check on its face recites that it was given for "Dodge 2 door sedan" followed by the serial and motor numbers. There is nothing in the indictment which could be taken as a description of the Pontiac car. On the other hand, everything in the indictment points to the Dodge car as the property fraudulently obtained by means of the check.

The proof, however, plainly shows that the Dodge car was obtained by defendant on credit or on commission, not by any fraudulent check or pretense. During the course of the proof the district attorney-general stated:

"We are not basing this prosecution upon the fact that he obtained the Dodge automobile by means of the check but insist that he is guilty of obtaining the Pontiac car by means of a bad check for $585.00."

It seems altogether probable that the district attorney-general was not advised as to the real facts of the case when the indictment was prepared and after the facts developed, tried to get along on the indictment as framed. This, however, we think was not possible.

In *State* v. *Cooley,* 141 Tenn., 33, 206 S. W., 182, 183, this court, referring to section 11157 of the Code, said: "The gravamen of the charge against the defendants, as defined by the statute, is not the issuance of a check, but is the obtaining, with fraudulent intent, money or other property or credit by means of a check. The 'bad check' is merely the prohibited means of accomplishing the fraud."

In other words, a prosecution under the bad check law is not essentially different from a prosecution for obtaining property by any other false pretense. The rule is well settled that in a prosecution for obtaining goods under false pretenses the indictments must specify the goods obtained.

■ "An indictment or information charging the accused with having obtained money or other property, or the signature of the party defrauded, must contain a description of the property alleged to have been obtained, or the instrument alleged to have been signed, and this description must be of sufficient certainty and particularity to enable the accused to make his defense, and the court and jury to determine whether the property disclosed in the evidence is the property set out in the indictment. Some of the cases hold that the description must be made with the same particularity that would be required in an indictment for a larceny of such property; other cases are to the effect that the indictment or information may describe the property in the language used by the accused in making the false pretenses. However, the description of the property should be reasonably certain, and as particular as the case will admit of. This description need not be by the legal name of the article, and should not be in the alternative." 1 Wharton Criminal Procedure, section 643. To the same effect see 2 Bishop Criminal Procedure, section 627(3).

■ A conviction under the indictment herein would afford the defendant no protection in a later prosecution for obtaining the Pontiac sedan upon the faith of the bad check.

For the reasons stated, the judgment of the court below is reversed.