415 S.E.2d 460

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Kennie CHILDERS, Defendant Below, Appellant.**

**No. 20426.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1992.

Decided March 5, 1992.

J.W. Feuchtenberger, Stone, McGhee, Feuchtenberger & Barringer, Bluefield, for appellant.

Joanna I. Tabit, Deputy Atty. Gen., Charleston, for appellee.

MILLER, Justice:

Kennie Childers, the defendant below, appeals the final order of the Circuit Court of McDowell County, dated May 23, 1990,

denying his motions for judgment of acquittal and for a new trial. On appeal, the defendant contends that the indictment under which he was tried was fatally defective; we agree, and we reverse the defendant's conviction.

## I.

The defendant is the president of a company called "Olde Fern, Inc.," which operated a coal mine and preparation plant at Algoma, McDowell County. On June 2, 1989, the defendant met with Roy Smith, the Commissioner of the West Virginia Department of Labor (the Department), and Clarence Compton, a compliance officer for the Department. During the meeting, Mr. Smith told the defendant that under W.Va. Code, 21–5–14(a) (1989), of the West Virginia Wage Payment and Collection Act (the Act), Olde Fern, Inc., would be required to post a wage bond.[1]

On June 8, 1989, Mr. Compton went to the mine site and asked the defendant whether he had posted the wage bond. When Mr. Compton learned that the defendant had not complied, he obtained authorization from the Commissioner to issue a cease and desist order as provided for in W.Va.Code, 21–5–15(c)(1) (1989).[2] Under the terms of the cease and desist order, Olde Fern, Inc., had five days to secure a wage bond. If within that time the corporation did not post a wage bond, it was prohibited from further operations. The defendant was informed that if the corporation violated the cease and desist order, he would be subject to possible incarceration, a fine, or both.[3]

Six days later, Mr. Compton returned to the job site to discover the coal mine and preparation plant operating at full capacity. Because the defendant had still failed to secure a wage bond, Mr. Compton obtained a felony warrant for Mr. Childers' arrest.

In October, 1989, the defendant was indicted by a grand jury for failing to secure a wage bond. The indictment recited that the defendant "committed the offense of 'Failure to Provide a Bond' by unlawfully, feloniously, knowingly, willfully and with intent to deprive employees of their wages and fringe benefits ... failing to provide and maintain a bond as required by Chapter 21, Article 5, Section 14 of the West Virginia Code[.]"

The defendant moved to quash the indictment because it did not adequately inform him of the nature of the crime charged or state the elements of the statutory offense. The circuit court denied this motion. Following a two-day jury trial, the defendant

---

**1.** W.Va.Code, 21–5–14(a), provides, in pertinent part:

> "*Bond required.*—With the exception of those who have been doing business in this state actively and actually engaged in construction work, or the severance, production or transportation of minerals for at least five consecutive years next preceding the posting of the bond required by this section, every employer, person, firm or corporation engaged in or about to engage in construction work, or the severance, production or transportation (excluding railroads and water transporters) of minerals, shall, prior to engaging in any construction work, or the severance, production or transportation of minerals, furnish a bond on a form prescribed by the commissioner, payable to the state of West Virginia, with the condition that the person, firm or corporation pay the wages and fringe benefits of his or its employees when due."

**2.** See note 8, *infra,* for the text of W.Va.Code, 21–5–15(c)(1).

**3.** The cease and desist order provides, in pertinent part:

> "Pursuant to Section 15, Article 5, Chapter 21 of the Code of West Virginia Olde Fern, Inc., Box 430, Northfork, West Virginia 24898 is hereby ordered to post an adequate wage bond with the West Virginia Department of Labor or cease and desist further operations in McDowell and Wyoming County, State of West Virginia, effective 5:00 p.m., June 13th, 1989. Any person, firm or corporation who continues to engage in construction work or the severance, production or transportation of minerals without an approved bond after such specified period shall be guilty of a felony, and, upon conviction thereof, shall be fined not less than Five Thousand Dollars nor more than Thirty Thousand Dollars, or imprisoned in the penitentiary not less than one nor more than three years, or both fined and imprisoned."

was convicted, sentenced to one-to-three years incarceration, and fined $25,000.[4]

## II.

### A.

The defendant's primary assignment of error is that the indictment was fatally defective because it failed to allege all of the elements of the offense charged. Moreover, he contends that the indictment is flawed because it does not contain any of the essential language of W.Va.Code, 21–5–15(c), or provide a "plain, concise and definite written statement of the essential facts constituting the offense charged." W.Va.R.Crim.P. 7(c)(1).

The Sixth Amendment to the United States Constitution commands, in part: "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]" In *United States v. Cruikshank*, 92 U.S. 542, 558, 23 L.Ed. 588, 593 (1875), the United States Supreme Court outlined the minimum criteria an indictment must meet in order to comply with the Sixth Amendment:

> "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone."

Thus, if the averments of the indictment are sufficient to enable the defendant to prepare his defense and to plead former jeopardy after acquittal or conviction, the constitutional requirement is met. *See Burton v. United States*, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057 (1906). *See generally* M. Rhodes, *Orfields Criminal Procedure Under the Federal Rules* § 7.7 (2d ed. 1985).

We adopted a similar test under Article III, Section 14 of the West Virginia Constitution[5] in Syllabus Point 1 of *State v. Furner*, 161 W.Va. 680, 245 S.E.2d 618 (1978):

> "An indictment is sufficient when it clearly states the nature and cause of the accusation against a defendant, enabling him to prepare his defense and plead his conviction as a bar to later prosecution for the same offense."

*See also State v. Fitcher*, 175 W.Va. 681, 337 S.E.2d 918 (1985); *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981); *State v. Ash*, 139 W.Va. 374, 80 S.E.2d 339 (1954).

In Syllabus Point 3 of *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983), we adopted a test to assist prosecutors in preparing an indictment for a statutory offense:

> "An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based."

*See also State v. Young*, 185 W.Va. 327, 406 S.E.2d 758 (1991); *State v. Satterfield*, 182 W.Va. 365, 387 S.E.2d 832 (1989); *State v. Nicastro*, 181 W.Va. 556, 383 S.E.2d 521 (1989); *State v. Knight*, 168 W.Va. 615, 285 S.E.2d 401 (1981); *State v.*

---

**4.** One of the defendant's arguments on appeal is that Olde Fern, Inc., was attempting to use the wage bond posted for a bankrupt corporation named Dan–Dyster, which had previously operated on the same property. One of the principals in that corporation was the defendant, Kennie Childers, who was also a principal for Olde Fern, Inc. The defendant claims Olde Fern, Inc., was attempting to comply with W.Va.Code, 21–5–14(a), by obtaining the Dan–Dyster wage bond in bankruptcy court. There is no provision in the Act authorizing this type of procedure.

**5.** Article III, Section 14 of the West Virginia Constitution provides: "In all [criminal] trials, the accused shall be fully and plainly informed of the character and cause of the accusation[.]"

*Parks,* 161 W.Va. 511, 243 S.E.2d 848 (1978).

For example, in *State v. Knight, supra,* the defendant was convicted of indecent exposure. One of the elements of that crime is lack of consent by the victim. Because the indictment failed to allege this element, we held in Syllabus Point 2 of *Knight:*

> "The State's failure to provide in the indictment sufficient information from which the defendant could determine the statute he was being charged with violating and to state each element involved in the crime did not give the defendant adequate notice from which he could prepare a defense and is grounds for reversal of the conviction obtained thereunder."

*See also State v. Parks, supra; State ex rel. Cain v. Skeen,* 137 W.Va. 806, 74 S.E.2d 413 (1953); *Scott v. Harshbarger,* 116 W.Va. 300, 180 S.E. 187 (1935).[6]

### B.

There are several obvious flaws in the indictment in this case. First, it recites the statute violated as W.Va.Code, 21–5–14. However, this section describes no criminal prohibitions, but merely outlines the various statutory requirements surrounding the obtaining and processing of an employer's wage bond.[7] The actual criminal penalties arise under W.Va.Code, 21–5–15.

This latter section was ultimately used at trial to convict the defendant.

■ The State attempted to prove that the defendant violated W.Va.Code, 21–5–15(c)(1), by failing to obey the Commissioner's cease and desist order.[8] This subsection allows the Commissioner to issue an order requiring an employer to cease and desist operations if the employer has failed to post the wage bond required under W.Va.Code, 21–5–14. If the employer disobeys the cease and desist order and "continues to engage in construction work or the severance, production or transportation of minerals without an approved bond after such specific period [the employer] shall be guilty of a felony[.]" W.Va.Code, 21–5–15(c)(1). Only when the employer fails to comply with the cease and desist order issued pursuant to W.Va.Code, 21–5–15(c)(1), may felony charges be brought.

■ The indictment in this case does not refer to W.Va.Code, 21–5–15(c)(1), but rather to W.Va.Code, 21–5–14, which contains no criminal penalties. Moreover, the indictment fails to state all of the essential elements of W.Va.Code, 21–5–15(c)(1). Consequently, the indictment was clearly void, and, for this reason, the defendant's conviction must be reversed.

■ Even though we are reversing because the indictment was defective, it is generally held that upon the reversal of a

---

6. In Syllabus Point 1 of *Scott v. Harshbarger, supra,* we held: "An indictment, based upon a form prescribed by statute, which omits to charge one of the material elements of an offense as defined by statute, is void."

7. W.Va.Code, 21–5–14, contains a number of subsections. Under Subsection (a), the type of work for which a wage bond is required and the amount of such bond is outlined. Subsection (b) allows the Commissioner to waive the bond requirements if certain conditions are met. Subsection (c) details the form of the bond and the place where it should be filed. Subsection (d) gives the employees a cause of action on the bond for wages and fringe benefits due and unpaid. Subsection (e) describes the steps the Commissioner can take when an employer has failed to pay his employees' wages or fringe benefits. Subsection (f) outlines the procedure an employer should follow in posting and reporting on the bond. Finally, Subsection (g) explains how to terminate the bond.

8. The relevant language of W.Va.Code, 21–5–15(c)(1), provides:

> "At any time the commissioner determines that a person, firm or corporation has not provided or maintained an adequate bond, as required by section fourteen of this article, the commissioner shall issue a cease and desist order ... requiring that said person, firm or corporation either post an adequate bond or cease further operations in this state within a period specified by the commissioner; ... Any person, firm or corporation who continues to engage in ... work ... without an approved bond after such specified period shall be guilty of a felony, and, upon conviction thereof, shall be fined not less than five thousand dollars nor more than thirty thousand dollars, or imprisoned in the penitentiary not less than one nor more than three years, or both fined and imprisoned."

criminal case on appeal, the State is not precluded by double jeopardy principles from procuring a new indictment and retrying the defendant, except when a criminal conviction is set aside because of insufficient evidence.[9] *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). *See, e.g., Montana v. Hall,* 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987); *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The traditional basis for this rule was explained by Justice Harlan in *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448, 451 (1964):

"Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution."

In *State v. Adkins,* 170 W.Va. 46, 289 S.E.2d 720 (1982), we reversed the defendant's conviction because of a defective indictment. After some discussion of double jeopardy and our applicable criminal statutes, we stated that "double jeopardy does not bar a retrial of the defendant upon an indictment charging him as an aider and abettor[.]" 170 W.Va. at 51, 289 S.E.2d at 725. In other cases, we have recognized, without any elaborate discussion, the right of the State to procure a new indictment where the original indict-ment was declared void on appeal. *See State ex rel. Starr v. Halbritter,* 183 W.Va. 350, 395 S.E.2d 773 (1989); *State v. Satterfield, supra; State ex rel. Pinson v. Maynard,* 181 W.Va. 662, 383 S.E.2d 844 (1989); *State v. Daniel,* 144 W.Va. 551, 109 S.E.2d 32 (1959).

### III.

The defendant also argues that the cease and desist order was issued against Olde Fern, Inc., but the indictment charged him personally rather than as an officer of the corporation. The defendant acknowledges the longstanding rule that

" '[t]he existence of a corporate entity does not shield from prosecution corporate agents who knowingly and intentionally cause the corporation to commit crimes, in that a corporation obviously acts, and can act, only by and through its member agents and it is their conduct which criminal law must deter and those agents who in facts are culpable.' " *Miller v. State,* 732 P.2d 1054, 1059 (Wyo. 1987).

*See also United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *United States v. Wise,* 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962); *United States v. Sherpix, Inc.,* 512 F.2d 1361 (D.C.Cir.1975); *United States v. McDonald & Watson Waste Oil Co.,* 933 F.2d 35 (1st Cir.1991); *United States v. Amrep Corp.,* 560 F.2d 539 (2d Cir.1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 731, 54 L.Ed.2d 759 (1978); *Clifton v. State,* 51 Del. 339, 145 A.2d 392 (1958); *State v. Placzek,* 380 A.2d 1010 (Me.1977); *Attorney General v. Ankersen,* 148 Mich.App. 524, 385 N.W.2d 658 (1986); *People v. Byrne,* 128 Misc.2d 448, 494 N.Y.S.2d 257 (1985); *State v. Seufert,* 49 N.C.App. 524, 271 S.E.2d 756 (1980), *review denied,* 301 N.C. 726, 276 S.E.2d 289 (1981); *Commonwealth v. Klinger,* 369 Pa.Super. 526, 535 A.2d 1060, *appeal denied,* 520 Pa. 582, 549 A.2d 915 (1988);

---

**9.** Other circumstances that may bar retrial after appeal include a finding of prosecutorial or judicial misconduct that causes a mistrial, *see State v. Pennington,* 179 W.Va. 139, 365 S.E.2d 803 (1987); *Keller v. Ferguson,* 177 W.Va. 616, 355 S.E.2d 405 (1987), and a finding the three-term rule, W.Va.Code, 62–3–21 (1959), has been violated. *See State v. Young,* 167 W.Va. 312, 280 S.E.2d 104 (1981).

*State v. Flake,* 83 S.D. 655, 165 N.W.2d 55 (1969); *State v. Lunz,* 86 Wis.2d 695, 273 N.W.2d 767 (1979). *See generally* 18B Am. Jur.2d *Corporations* § 1896 (1985).

■ Moreover, as explained by the Virginia Supreme Court in *Bourgeois v. Commonwealth,* 217 Va. 268, 274, 227 S.E.2d 714, 718 (1976): "An officer cannot avoid criminal responsibility for an illegal act on the ground that it was done in his official capacity or through the instrumentality of the corporation which he controls and dominates and which he has employed for that purpose." (Citation omitted). Finally, in an indictment charging a corporate officer, it is not essential that the corporate name be mentioned, so long as the officer is identified and the requisite criminal elements are outlined. *See State v. Picheco,* 2 Conn.Cir. 584, 203 A.2d 242 (1964). *See also State v. Pruitt,* 178 W.Va. 147, 358 S.E.2d 231 (1987).

We implicitly recognized this general rule in *Mullins v. Venable,* 171 W.Va. 92, 297 S.E.2d 866 (1982), where we discussed the civil liability of employers under the Act. In *Mullins,* thirteen former employees of Venable and Billups Corporation sued James T. Venable, individually, as an officer of the corporation, seeking to recover wages, fringe benefits, and liquidated damages. The sole issue on appeal was whether the Act "authorizes employees of a corporation to bring suit against an offi-cer of the corporation, individually, to recover wages, fringe benefits, and liquidated damages, where the officer knowingly permits the corporation to violate the provisions of the Act." 171 W.Va. at 93, 297 S.E.2d at 868. We found that the Act did authorize such a cause of action because "corporate officers have a duty to see that their corporation obeys the law[.]" 171 W.Va. at 96, 297 S.E.2d at 871. (Citations omitted).

■ From the foregoing law, we conclude that officers, agents, and directors of a corporation may be criminally liable if they cause the corporation to violate the criminal law while conducting corporate business.[10]

### IV.

Accordingly, the judgment of the Circuit Court of McDowell County is reversed, and the case is remanded to that court with directions to dismiss the present indictment against the defendant.

Reversed and remanded with directions.

**10.** The defendant also argues that the trial court committed reversible error when it instructed the jury that the defendant's petition for review filed pursuant to W.Va.Code, 21–5–15(c)(2), did not stay enforcement of the Department's cease and desist order. We decline to address this issue simply because the defendant failed to post the required appeal bond under W.Va. Code, 21–5–15(c)(2) ("No appeal shall be deemed to have been perfected except upon filing with the clerk of the circuit court … a bond or other security to be approved by the court[.]"). It was on this basis that the circuit court refused the stay.