COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Annunziata
Argued at Salem, Virginia


DELANO COMPTON, S/K/A
 WILLIAM LUTHER DELANO COMPTON
                                        OPINION BY
v.          Record No. 1119-95-3    JUDGE ROSEMARIE ANNUNZIATA
                                         JULY 30, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF SMYTH COUNTY
                 Charles H. Smith, Jr., Judge

        Thomas R. Scott (Street, Street, Street,
        Scott & Bowman, on brief), for appellant.

        Steven A. Witmer, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


    Following a bench trial, appellant, William Luther Delano

Compton, was convicted of fraudulent conversion of property in

violation of Code § 18.2-115, sentenced to three years

imprisonment, all of which was suspended, and placed on three

years probation.  Appellant contends that his signature did not

appear on the lease agreement and, therefore, the evidence is

insufficient to support his conviction.  We disagree and affirm.

                              I.

    When considering the sufficiency of the evidence on appeal

in a criminal case, this Court views the evidence in a light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.  Higginbotham v.

Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  On

review, this Court does not substitute its own judgment for that

of the trier of fact. Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). The trial court's judgment will not be set aside unless it appears that the judgment is plainly wrong or without supporting evidence. Code § 8.01-680; Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

Timberland Log and Lumber, Inc., d/b/a/ Timberland of Saltville, Timberland Log and Lumber ("Timberland"), and Compton Logging, Inc. ("Compton Logging"), entered a lease agreement in which Timberland agreed to lease to Compton Logging a sawmill and certain related equipment. The lease provided, inter alia, that (1) Timberland would continue to own the leased equipment until the lease terms had been fully complied with; and (2) Compton Logging would not sell or otherwise part with possession or control of the equipment without Timberland's written consent.

The court found, and appellant conceded at trial, that appellant acted as Compton Logging's agent. Timberland's former secretary and treasurer, Ralph Williams, testified that appellant negotiated the terms of the lease on behalf of Compton Logging. Williams' testimony was corroborated by Timberland's former president, Vencil Minton. Williams further testified that the lease embodied the terms of the agreement reached with appellant, that appellant was present when the lease was signed, and that appellant directed that the lease be signed on behalf of Compton

Logging.

After Compton Logging fell behind in its lease payments, Williams brought the arrearages to appellant's attention. Appellant assured him "something would be done." Upon his return to the sawmill, however, Williams found it abandoned and some of the leased items, including a bulldozer and a loader, were later found missing. During his investigation of the case, Officer Danny Waddell of the Smyth County Sheriff's Office took a statement from appellant. Appellant stated that both the bulldozer and the loader had been sold or traded to an equipment company in West Virginia. He further stated, "I traded these pieces of equipment about October or November of last year." With respect to certain trailers and trucks leased to Compton Logging, appellant stated, "They were junk when I bought or leased them." Williams denied that Timberland had given permission to sell the bulldozer and loader. Moreover, no evidence of written consent to sell the equipment as required by the terms of the lease was presented.

II.

Code § 18.2-115 provides in part:
> Whenever any person is in possession of any personal property, including motor vehicles or farm products, in any capacity, the title or ownership of which he has agreed in writing shall be or remain in another, or on which he has given a lien, and such person so in possession shall fraudulently sell, pledge, pawn or remove such property from the premises where it has been agreed that it shall remain, and refuse to disclose the location thereof, or otherwise dispose of the

- 3 -

property or fraudulently remove the same from the Commonwealth, without the written consent of the owner or lienor or the person in whom the title is, or, if such writing be a deed of trust, without the written consent of the trustee or beneficiary in such deed of trust, he shall be deemed guilty of the larceny thereof.

Appellant does not dispute that sufficient evidence supports the trial court's finding that he fraudulently sold the equipment in question. However, appellant contends that because the evidence fails to establish that he signed the lease agreement as required under Code § 18.2-115, his conviction must be reversed. We disagree with appellant's reasoning and affirm the trial court on the following grounds.

It is well settled that where a corporation's business "involves a violation of the law, the correct rule is that all who participate in it are liable." Crall v. Commonwealth, 103 Va. 855, 859, 49 S.E. 638, 640 (1905); Hays v. Commonwealth, 55 S.W. 425, 426 (Ky. 1900) ("It is evident that a corporation, if in fact it engaged in [illegal conduct] through its agent or servant, would be liable to indictment and conviction . . . and likewise the agent so violating the law might be indicted and punished"); City of Wyandotte v. Corrigan, 10 P. 99, 102 (Kan. 1886) ("It is immaterial [with respect to criminal liability] whether appellant was acting for himself or for the company"). Accordingly, corporate agents may not use the corporate entity to shield themselves from criminal liability for their own acts. See Bourgeois v. Commonwealth, 217 Va. 268, 274, 227 S.E.2d 714,

718 (1976) ("[A]n officer cannot avoid criminal responsibility for an illegal act on the ground that it was done . . . through the instrumentality of the corporation which he controls and dominates and which he has employed for that purpose); United States v. Sherpix, Inc., 512 F.2d 1361, 1372 (D.C. Cir. 1975); State v. Childers, 415 S.E.2d 460, 465-66 (W. Va. 1992); State v. Lang, 417 S.E.2d 808, 809-10 (N.C. Ct. App.), review denied, 421 S.E.2d 158 (N.C. 1992); State v. Seufert, 271 S.E.2d 756, 759 (N.C. Ct. App. 1980), review denied, 276 S.E.2d 289 (1981); State v. Louchheim, 244 S.E.2d 195, 203-04 (N.C. Ct. App. 1978), aff'd, 250 S.E.2d 630 (N.C.), cert. denied, 444 U.S. 836 (1979); see generally 1 Kathleen F. Brickey, Corporate Criminal Liability §§ 5:01-5:02 (2d ed. 1991); 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 3.10 (1986); 18B Am. Jur. 2d Corporations § 1893 (1985); 19 C.J.S. Corporations §§ 551-552 (1990).

"`[A] corporation obviously acts, and can act, only by and through its member agents[,] and it is their conduct which criminal law must deter and those agents who in fact[] are culpable.'" Childers, 415 S.E.2d at 465 (quoting Miller v. State, 732 P.2d 1054, 1059 (Wyo. 1987)). "No doctrine of agency law would permit corporate agents to immunize themselves from criminal responsibility for their own acts by the simple expedient of incorporating." 1 Brickey, supra, § 5:02, at 152 (citing State v. Cooley, 206 S.W. 182 (Tenn. 1918)). "If the

individual personally engaged in the criminal conduct or directed or permitted its commission, it is no defense that the offense was performed on behalf of the enterprise." 1 LaFave & Scott, supra, § 3.10, at 361; see also Bourgeois, 217 Va. at 274, 227 S.E.2d at 718; Lang, 417 S.E.2d at 810 (rejecting defendant's contention that principles concerning liability extend only to corporate share-holders); Crall, 103 Va. at 859, 49 S.E. at 640; 1 Brickey, supra, §§ 5:01, 5:02, at 148-53; 1 LaFave & Scott, supra, § 3.10, at 361; Childers, 415 S.E.2d at 466; Seufert, 271 S.E.2d at 759.

Here, the evidence established that appellant exercised significant control over Compton Logging and either directed its acts or personally and directly engaged in acts which violated Code § 18.2-115. Appellant alone dealt with the Timberland officers in negotiating the lease. Appellant directed the lease to be signed on behalf of Compton Logging. Appellant admitted to Officer Waddell that he leased the missing trailers and trucks. Appellant gave assurances to the Timberland officers that the late lease payments would be made. And, appellant admitted to Officer Waddell that he traded the bulldozer and loader to the West Virginia equipment company. The evidence proved that appellant sold the equipment in contravention of that lease and that he was aware the lease terms required written consent from Timberland before the equipment could be sold. Although the evidence was in dispute as to whether appellant had obtained such

consent, that dispute was resolved by the trier of fact against appellant.

In short, although appellant's signature does not appear on the lease, each element necessary to the commission of the crime was committed either personally by appellant or by the corporation at appellant's direction.[1]

Accordingly, appellant's conviction is affirmed.

Affirmed.

---

[1] The dissent's focus on appellant's failure to personally sign the lease ignores other material evidence in the case which established that the corporate lease was signed solely at appellant's direction. The dissent fails to address the applicability of established principles in Virginia law, under which liability is imputed to an agent for criminal corporate acts performed at the agent's direction and in his stead.
The dissent reasons that, because Code § 18.2-118 excludes the requirement of an agreement by the accused in writing, appellant should have been prosecuted under that section and, by extension, a conviction under Code § 18.2-115 is necessarily precluded. The reliance placed on Code § 18.2-118 is misplaced. First, Code § 18.2-115 addresses the offense at issue here, and appellant was properly prosecuted under it; appellant's conviction arose from a violation of the rights of a secured creditor. See Bain v. Commonwealth, 215 Va. 89, 93, 205 S.E.2d 641, 644 (1974) (the offense contemplated by this section arises when a debtor deprives "a secured creditor of his collateral by appropriating it to the debtors' own use"). Second, the dissent fails to recognize that, notwithstanding the absence of an agreement signed by the accused, prosecution under Code § 18.2-118 also requires an analysis premised on Virginia's corporate agent liability principles. Under the facts of this case, the "person" in which the terms of the lease place possession or control of the equipment, was the corporation, not appellant. See Code §§ 18.2-118(a) and (b).

Benton, J., dissenting.

William Luther Delano Compton was convicted of violating

Code § 18.2-115, which reads in pertinent part as follows:

> Whenever any person is in possession of
> any personal property, including motor
> vehicles or farm products, in any capacity,
> the title or ownership of <u>which he has agreed
> in writing shall be or remain in another, or
> on which he has given a lien</u>, and such person
> so in possession shall fraudulently sell,
> pledge, pawn or remove such property from the
> premises where it has been agreed that it
> shall remain, and refuse to disclose the
> location thereof, or otherwise dispose of the
> property or fraudulently remove the same from
> the Commonwealth, without the written consent
> of the owner or lienor or the person in whom
> the title is, or, if such writing be a deed
> of trust, without the written consent of the
> trustee or beneficiary in such deed of trust,
> he shall be deemed guilty of the larceny
> thereof.

Id. (emphasis added).

To prove a violation of the statute, the Commonwealth had to prove that Compton "agreed in writing" that title to the property was to remain with Timberland or that Compton "ha[d] given a lien" on the equipment to Timberland. The evidence proved neither.

The evidence proved Compton Logging, Inc., a Virginia Corporation, entered into a written lease agreement with Timberland. Pursuant to the agreement, Compton Logging, Inc. leased a sawmill and various equipment and other property. Under the agreement, Compton Logging, Inc. had "the right to sell or trade equipment . . . [upon] prior written approval of

- 8 -

[Timberland] and such approval [could] not be unreasonably withheld."  The agreement further stated that "[u]ntil all of the terms of this lease are complied with each item of leased equipment shall be at all times the sole, exclusive property of [Timberland]."  The agreement did not "prohibit the use of the equipment by any manager or managing agent retained by [Compton Logging, Inc.] to manage the premises in which the equipment shall be located."  The agreement was signed on behalf of Compton Logging, Inc. by "Margaret R. Compton, by M.R. Scott, her attorney-in-fact."  Under the signature line was the designation, "President/Vice President."  The corporate seal of Compton Logging, Inc. was attested by "Mary R. Scott," the corporation's secretary.

The evidence proved that Margaret R. Compton, the "President/Vice President," was Compton's wife.  No evidence in this record proved that Compton was an employee, officer, or director of Compton Logging, Inc.  In addition, no evidence proved that Compton had the authority to sign the lease, direct that the lease be signed, or approve the execution of the lease.  More significant, however, the evidence undisputably proved that Compton did not sign the lease agreement, any writing concerning the title or ownership of the equipment, or any lien regarding the equipment.

Furthermore, no evidence proved that any person that signed the lease fraudulently sold, pledged, pawned or removed the

equipment.  Indeed, no evidence proved that the corporation engaged in a criminal act.

Acknowledging that "[Compton's] signature does not appear on the lease," the majority nonetheless concludes that "each element necessary to the commission of the crime was committed either directly by [Compton] or by the corporation at [Compton's] direction."  The majority's exhaustive discussion of criminal liability of corporate agents fails to explain the basis for imposing liability under Code § 18.2–115 when Compton, personally, had not agreed by any writing, an essential element proscribed by the statute, to do the act that the statute specifies.

The legislature has specifically addressed Compton's conduct in Code § 18.2–118.  That statute reads in pertinent part as follows:

> (a) Whenever any person is in possession or control of any personal property, by virtue of or subject to a written lease of such property, except property described in § 18.2–117, and such person so in possession or control shall, with intent to defraud, sell, secrete, or destroy the property, or dispose of the property for his own use, or fraudulently remove the same from the Commonwealth without the written consent of the lessor thereof, or fail to return such property to the lessor thereof within ten days after expiration of the lease or rental period for such property stated in such written lease, he shall be deemed guilty of the larceny thereof.

> (b) The fact that such person signs the lease or rental agreement with a name other than his own, or fails to return such property to the lessor thereof within ten days after the

giving of written notice to such person that the lease or rental period for such property has expired, shall be prima facie evidence of intent to defraud. For purposes of this section, notice mailed by certified mail and addressed to such person at the address of the lessee stated in the lease, shall be sufficient giving of written notice under this section.

(c) The venue of prosecution under this section shall be the county or city in which such property was leased or in which such accused person last had a legal residence.

Simply put, the Commonwealth prosecuted Compton under the wrong statute. The majority's decision sanctions and compounds the error.

For these reasons, I dissent and would reverse the conviction.